ORIGINAL



Raymond S. Pratt, Defendant
\_\_ \_hristian Street
\_\_\_delphia, PA 19147
215-469-6073

**COMPLAINT AND JURY
DEMAND ON ALL COUNTS**

No. _____   11   1346

## IN THE UNITED STATES DISTRICT COURT
### FOR
### THE EASTERN DISTRICT OF PENNSYLVANIA

RAYMOND S. PRATT,
        Plaintiff
   vs.

CITY OF PHILADELPHIA,
PHILADELPHIA COUNTY;
MAYOR MICHAEL NUTTER;
COMMISSIONER CHARLES H. RAMSEY;
PHILADELPHIA POLICE DEPARTMENT (PPD);
POLICE CAPTAIN BRANVILLE BARD;
PPD 22ND POLICE DISTRICT;
POLICE OFFICER JUSTIN P. RIOS,
BADGE No. 3330;
POLICE OFFICER (NAMED) RON BRIMSON
OR BRINSON, BADGE No. 4265 or 4625;
JOHN DOE BLACK POLICE SARGEANT,
(NAME & BADGE No. UNKNOWN);
SEVEN TO NINE JOHN DOE POLICE OFFICERS
OF THE 22ND POLICE DISTRICT,
(NAMES/BADGE Nos. UNKNOWN)
        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL RIGHTS VIOLATION
42 U.S.C. §§ 1983, 1985(3) & 1988
and PENDENT STATE CLAIMS

FILED

MAR - 2 2011

_____NZ, Clerk
_____p. Clerk

## COMPLAINT AND JURY DEMAND ON ALL COUNTS

### INTRODUCTION

    This action arises out of Defendants' overt racial and age discrimination against Plaintiff, and an

invidious animus discriminatory conspiracy to commit a willful and intentional deprivation of Plaintiff's

civil rights in order to deprive Plaintiff of his rights of "enjoying and defending life and liberty, of

acquiring, possessing and protecting property and reputation, and of pursuing his own happiness" and

unlawfully and in violation of Plaintiff's fundamental due process rights impose the Philadelphia

Civil Rights Violation Complaint           1

Municipal Court's, Community Court's and the Philadelphia District Attorney's Advanced Rehabilitative

Disposition (ARD) program, requiring Plaintiff to plead guilty to summary offense charges and

participate in a court ordered program of community service, a fine, and the record of arrest "expunged"

by the D.A., upon completion of the court ordered requirements; notwithstanding the fact Plaintiff never

committed the alleged offense alleged in a citation, made-out, signed, and issued by the partner of the

arresting police officer.

The causes of action brought are **(1)** violation of 42 U.S.C. sec. 1983 (due process and equal

protection clauses), **(2)** violation of 42 U.S.C. sec. 1985(3) (conspiracy), **(3)** common law conspiracy to

conceal police corruption, **(4)** negligent infliction of emotional distress, **(5)** intentional infliction of

emotional distress, and **(6)** common law assault and battery, **(7)** animus racial discriminatory false arrest

and unlawful detention, **(8)** invidious animus discriminatory deprivation of substantive and fundamental

due process & equal protection of the laws, **(9)** invidious animus discriminatory malicious prosecution,

**(10)** invidious animus discriminatory use of excessive force, **(11)** negligent tortuous willful blindness

allowance of police officers' intentional violations of civil rights of Plaintiff and other similarly situated

residents of the City of Philadelphia, **(12)** invidious animus discriminatory violation of Plaintiff's Fourth

Amendment right, **(13)** invidious animus discriminatory violation of Plaintiff's Fifth Amendment right,

**(14)** invidious animus discriminatory violation of Plaintiff's Eighth Amendment right, and **(15)** invidious

animus discriminatory violation of Plaintiff's Fourteenth Amendment rights.

## JURISDICTION

1.      Jurisdiction of this court arises under 28 U.S.C. §§ 1331, 1337, 1343(a), and 1367(a); 42

U.S.C. §§ 1983 (civil action for deprivation of rights), 1985(3) (conspiracy to interfere with civil rights),

1988 (proceedings in vindication of civil rights); 18 U.S.C. 1341; 18 U.S.C. 1511; 42 U.S.C. § 16(a).

2.      Jurisdiction of this court for the pendent claims is authorized by Fed. R. Civ. P. 18(a), and

arises under the doctrine of pendent jurisdiction as set forth in <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966).

## PARTIES

3.      Plaintiff is Raymond S. Pratt ("Pratt" of "Plaintiff"), is a sixty-six (66) years old, black male resident of the Commonwealth of Pennsylvania, residing at 1109 Chritistian Street, Philadelphia, Pa  19147

4.      The names and last known addresses of the Defendants' residences and/or offices or usual places of business are:

5.      THE CITY OF PHILADELPHIA ("Philadelphia") is a county, city, and political subdivision of the Commonwealth of Pennsylvania, organized as a First Class City under The Philadelphia Home Rule Charter, as "prepared by the Philadelphia Charter Commission under authority of the Act of the General Assembly of the Commonwealth of Pennsylvania, approved April 21, 1949, P. L. 665," and as adopted by the Electors April 17, 1951; and further information, Philadelphia maintains a usual place of business, located in the Office of the Mayor, City Hall, with service of process, in the above-captioned, for Philadelphia, Mayor Nutter, Commissioner Ramsey, the Philadelphia Police Department, Captain Bard, the 22nd Police District, Officer Justin P. Rios, Officer Ron Brimson, John Doe Black Police Sargeant, and Seven to Nine John Doe Police Officers of the 22nd Police District, to be made upon Shelley R. Smith, City Solicitor, City of Philadelphia Law Department, City Solicitor's Office, One Parkway, 1515 Arch St., 15th Fl., 19102-1595.

6       MICHAEL NUTTER ("Mayor Nutter" or "Nutter") is a resident of the Commonwealth of Pennsylvania, with a public office and usual place of business located at Mayor's Action Center: City Hall, Room 116. Philadelphia, PA 19107, as Nutter is elected Mayor of the City of Philadelphia under the Philadelphia Home Rule Charter to exercise the duties of the Office of Mayor of the City of

Philadelphia as "The executive and administrative power of the City, as it now exists, shall be exclusively vested in and exercised by a Mayor and such other officers, departments, boards and commissions as are designated and authorized in this charter." Philadelphia Home Rule Charter, § 1-102(1); 3-100(a).

7.      The PHILADELPHIA POLICE DEPARTMENT ("PPD") is a Department of the City of Philadelphia, as created under the Philadelphia Home Rule Charter for the purpose of performance of the  executive and administrative work of the City of Philadelphia, pursuant to § 3-100(d.3) of The Charter; and also, "The Police Department shall have the power and its duty shall be to perform the functions of: Law Enforcement. It shall preserve the public peace, prevent and detect crime, police the streets and highways and enforce traffic statutes, ordinances and regulations relating thereto. The Department shall at all times aid in the administration and enforcement within the City of the statutes of the Commonwealth of Pennsylvania and the ordinances of the City," as well as, "Maintenance of the Philadelphia Police. The Department shall train, equip, maintain, supervise and discipline the Philadelphia Police;" and furthermore, "The primary function of the Police Department is law enforcement and this includes the enforcement of City ordinances and the enforcement of State laws operative within the City," with the Headquarters of the Philadelphia Police Department, and its office/usual place of business located at The Roundhouse, Philadlephia Police Department Headquarters, 6th & Race Streets, Philadelphia, PA 19106. Philadelphia Home Rule Charter, §§ 5-200(a), (b) and Annotation, Purposes 2.

8.      CHARLES H. RAMSEY ("Commissioner Ramsey" of "Ramsey") is, to the best of Plaintiff's knowledge, belief and information, a resident of the Commonwealth of Pennsylvania, with a public office and usual place of business as Police Commissioner, located at The Roundhouse, Philadlephia Police Department Headquarters, Room ***, 6th & Race Streets, Philadelphia, PA 19106, as Ramsey is appointed, with Mayor Nutter's approval, by the Philadelphia Managing Director as Police

Commissioner, pursuant to the Philadelphia Home Rule Charter provision that "Each department shall

have as its head an officer who is either personally or by a duly authorized agent or employee of the

department, and subject at all times to the provisions of this charter, shall exercise the powers and

perform the duties vested in and imposed upon the department." Philadelphia Home Rule Charter, §§

3-101.3, 3-206(a).

9.      BRANVILLE BARD ("Captain Bard" or "Bard") is, to the best of Plaintiff's knowledge,

belief and information, a resident of the Commonwealth of Pennsylvania, with a public office and usual

place of business as District Commander of the 22nd Police District, located at 1747 North 17th Street,

Philadelphia, PA 19121, as Bard is a Captain in the Philadelphia Police Department and appointed by the

Philadelphia Police Department management, or Commissioner Ramsey, or Bard's immediate superiors

as the Commander of the Philadelphia Police Department's 22nd Police District, charged with the

command supervision of police officers of the 22nd District in their individual exercise of the Powers of

Policemen, as provided that "The members of the Philadelphia Police shall have all the powers conferred

by statute and ordinance upon members of the police force of cities of the first class and upon constables

of the Commonwealth of Pennsylvania. They shall have the power to make lawful searches, seizures and

arrests for violations of any statutes or ordinances in force in the City, to serve subpoenas when ordered

so to do by their superior officers, and to do such other acts as may be required of them by statute or

ordinance;" and furthermore, explaining that, "Specification in detail of the powers of policemen is

avoided in favor of a general statement of powers so that no particular power will be excluded because

of a failure to refer to it. Searches, seizures and arrests may be made if they are lawful, a constitutional

caution necessary for the police to bear in mind in the exercise of such powers. Police are empowered to

make lawful searches, seizures and arrests for the violation of any statutes, State or Federal, in force in

the City, and of City ordinances. The powers of the police include all the common law powers of police

officers." Philadelphia Home Rule Charter, § 5-201, Annotation; see Annotation to Section 1-100.

10.      PHILADELPHIA POLICE DEPARTMET 22nd POLICE DISTRICT is located at 1747 North 17th Street, (the "22nd District") Philadelphia, PA 19121, in the City of Philadelphia's 47th Ward..., the place of Philadelphia Police Department operations of police... bounded by Montgomery Avenue on the North, Broad Street on the East, Ridge Avenue at 19th Street to Ridge Avenue at Taylor Street and 19th Street to Ridge Avenue on the West, and Poplar Street, from Broad Street to 19th Street on the South boundry.

11.      JUSTIN P. RIOS, PPD Badge No. 3330 ("Rios"), arresting police officer of Plaintiff, is, to the best of Plaintiff's knowledge, belief and information, a resident of the Commonwealth of Pennsylvania, as Rios is a member of the Philadelphia Police Department, with a public office and usual place of business as a police patrol officer, assigned duty hours at the 22nd Police District, located at 1747 North 17th Street, Philadelphia, PA 19121, as Rios is a police patrol officer in the Philadelphia Police Department and assigned by the Philadelphia Police Department management and supervision, or Commissioner Ramsey, or Captain Bard, or Rios' immediate superiors as a police patrol officer of the Philadelphia Police Department's 22nd Police District, charged with the patrol duties and responsibilities of a police officer of the 22nd District in Rios' individual exercise of the duties and responsibilities of a police patrol officer of the 22nd District.

12.      BRIMSON or BRINSOM, PPD Badge No. 4265 or 4625 ("Brimson"), police patrol partner of arresting police officer of Plaintiff, is, to the best of Plaintiff's knowledge, belief and information, a resident of the Commonwealth of Pennsylvania, as Brimson is a member of the Philadelphia Police Department, with a public office and usual place of business as a police patrol officer, assigned duty hours at the 22nd Police District, located at 1747 North 17th Street, Philadelphia, PA 19121, as Brimson is a police patrol officer in the Philadelphia Police Department and assigned by

the Philadelphia Police Department management and supervision, or Commissioner Ramsey, or Captain Bard, or Brimson's immediate superiors as a police patrol officer of the Philadelphia Police Department's 22nd Police District, charged with the patrol duties and responsibilities of a police officer of the 22nd District in Brimson's individual exercise of the duties and responsibilities of a police patrol officer of the 22nd District.

13.   JOHN DOE BLACK POLICE SARGEANT (NAME & BADGE No. UNKNOWN) ("John Doe Police Sergeant) is, to the best of Plaintiff's knowledge, belief and information, a resident of the Commonwealth of Pennsylvania, with a public office and usual place of business as a Police Sergeant of the 22nd Police District, located at 1747 North 17th Street, Philadelphia, PA 19121, as Rios informed Pratt the John Doe Police Sergeant is a supervisor or supervising police sergeant, in the Philadelphia Police Department, at the 22nd District with a responsibility for the conduct of police officers of the 22nd District, in the performance of their charged duties, during the hours of the policers' on-duty activies and the John Doe police sergeants hours of supervision of said policers on-duty, during John Doe police sergeant's watch supervision.

14.   SEVEN TO NINE JOHN DOE POLICE OFFICERS OF THE 22ND POLICE DISTRICT (NAMES & BADGE Nos. UNKNOWN) ("group of police officers") who are to the best of Plaintiff's knowledge, belief and information, residents of the Commonwealth of Pennsylvania, as the group of police officers are members of the Philadelphia Police Department, assigned to duty at the 22nd District, with a public office and usual place of business, as police officers assigned to duty at the 22nd Police District, located at 1747 North 17th Street, Philadelphia, PA 19121, where the group of police officers may be found during their assigned on-duty hours of at the District.

## FACTS

15.   It is a matter of fact and a relevant fact that at all times, during the course of the events

that occured on January 14, 2011, involving Pratt and all of the defendants named in the complaint, Pratt

acted and always interacted with defendants in a civil, rational, reasonable, and lawful personal conduct,

self-expression of any and all words spoken to defendants Brimson and Rios in a demeanor and manner,

demonstrative of civility and a peaceful person, wholly without any form or element of an intention to

cause public inconvenience, annoyance or alarm, or recklessly create a risk thereof to either Rios or

Brimson or any member of the public, or in any place accessible to the public, wherein Pratt's

interactions with Brimson and Rios never, at any time, ever created a hazardous or physically offensive

condition by any act, actions or interaction by Pratt with Brimson and Rios, or any member of the

public, which did not serve or was not a legitimate purpose of an act, actions, or interaction, by Pratt

with Brimson and Rios and no member of the public.

16.     At all times, throughout the course of events of acts, actions, and conduct that transpired

between Pratt and Brimson and Rios together, at no time did either Brimson and/or Rios commit any

acts, actions, or individual or collective conduct towards Pratt or involving in any physical contact with

or engaging Pratt, that was, at any time, within the scope of either Brimson's or Rios' employment and

duties and/or responsibilities as Philadelphia police officers.

17.     Brimson and Rios are the specific bad actors at the root cause of Pratt's injuries inflicted

upon and suffered by Pratt and complained of as false arrest, physical assault upon Pratt's person, and

without probable cause to subject Pratt to unlawful detention and a peculiar, cruel and unusual

punishment during the entire course of the matter of Pratt being handcuffed and held in the back seat of

a patrol car, with complete disregard for Pratt's physical safety.

18.     The material fact allegations set forth below in regards to the acts, actions, and individual

or collective conduct of Brimson and Rios towards Pratt, over the period of more than three hours is

demonstrative, relevant and probative evidence that neither Brimson nor Rios was acting, or reasonably

believed that they were acting, within the scope of their duties, responsibilities and employment as Philadelphia Police Department employees in the capacity of street patrol officers.

19.     The gravamen of this complaint is the conduct and actions of Brimson and Rios, specidically, towards Pratt and, particularly, the conduct and actions towards Pratt, generally, of the commander and other police officers, as members of the 22nd District, while Pratt was imprisoned, handcuffed, and unlawfully detained in the back seat of the patrol car, in the driveway of the 22nd District, for a period time of three, and the relevant *nexus* of the matter complained of and the Philadelphia Police Department's management of street patrol officers, particularly, as to the conduct and activities of Brimson and Rios, the conduct of police officers of the 22nd District, generally, the supervision and oversight of the conduct and activities of patrol officers, generally, of the 22nd District, the documented street patrol officers' procedures, the police department policy(ies) and/or directive(s) for non-traffic statutory summary offense arrests without a warrant and the required prompt release following arrest w/out a warrant, and the law issue of compliance by police officers Brimson and Rios with the applicable black-letter law of the Pennsylvania Rules of Crimiinal Procedures (Pa. R. Crim. P.), specifically, Rules 440 and 441, as relevant and material to the cause of action asserted here, and claim for relief in this case.

20.     The actions and conduct of Brimson and Rios complained of in the complaint  originated with the false arrest of Raymond S. Pratt (Pratt), without a warrant on January 14, 2011.

21.     The subsequent actions of assault and battery against Pratt, Pratt's unlawful detention by means of a cruel and unusual punishment, and the willful and intentional deprivation of Pratt's human rights and constitutionally protected civil rights of substantive and fundamental due process right and equal protection of the laws  of the Commonwealth of Pennsylvania that followed Pratt's arrest without a warrant and continued, uninterruptedly, transpiring over a period of time of three to three and one-half

hours of excruciatingly painful, intentional and willful torture, for reasons Pratt believes was because of his race, black, and his age, elderly, due to which Brimson and Rios had no regard for Pratt's physical safety or civil rights and made a conscious, malicious and vile decision to deny Pratt his civil rights with the impunity, by police officers, of a total disregard for the constitutions and laws of the United States and the Commonwealth of Pennsylvania.

22.      Brimson did knowingly, willfully and intentionally place handcuffs on Pratt in a manner that Brimson wanted to and intended to cause Pratt a resulting, permanent or chronic, excruciatingly painful physical injury, and then forced Pratt into the patrol car to sit in a physical body contorted position in the back seat of a police patrol car, with the front-seats moved as far back as possible, so that Pratt could not sit with his legs in front of him, forcing Pratt to sit in an unnatural and awkward position, intended to make it difficult for Pratt to breath without aggravating the pain that was iminating from his hands and wrists that was radiating and throbbing throughout Pratt's body with every heartbeat.

23.      The three hour to three and a half-hour nightmare of the inhuman treatment and unlawful acts, actions, and either individual or collective conduct by Brimson and Rios towards Pratt supports showing and demonstrates the violations of Pratt's civil rights complained of here was truly unlawful and unprotected against the complained of conduct that was vilely, intentionally, and surreptitiously carried-out against Pratt, torturously in the back seat of a police patrol car, in the parking lot area, drive-way of the 22nd Police District of the Philadelphia Police Department.

24.      The citation, DC#: 11-22-003643-01, on the face of the citation, and District Control Number 1122003643, on the face of the Municipal Court of Philadelphia docket, is the evidence of the Commonwealth, together with the testimony of Rios, to support a conviction of Pratt for alleged disorderly conduct, in a pending summary trial, scheduled for March 8, 2011.

25.      On February 11, 2011, Pratt made an informal inquiry of the attorney for the

Commonwealth (the "Commonwealth's attorney" of the "attorney") in this matter, as to discovery in the form of disclosure and inspection, at which time the attorney informed Pratt the citation was the only evidence the Commonwealth was going to present to support to a conviction.

26.     On or about February 16, 2011, Pratt learned in a follow-up of the informal request for discovery that the attorney planned to only call Rios, as the "arresting officer" for his testimony of the matter, at trial in support of the citation and proof of Pratt's alleged disorderly conduct.

27.     The crux of the material facts in clear dispute in this matter are manifest on the face of the citation and will come to light after the testimony of Rios has been obtained at summary trial.

28.     The material facts in support of Pratt's cause of action and request for relief for the violation of Pratt's civil rights may be fully discerned from and shown in the content of the citation and the context of the language of the "arresting officer" used in the citation's "Nature of Offense" to stae the material facts of the disorderly conduct allegedly committed by Pratt.

29.     The content and context of the language used in the citation is clearly confusing in light of the material fact that Pratt never had any contact or conversation with Rios, the "arresting officer" on the face of the citation and on the face of the criminal court docket. A true and correct copy of the citation is attached hereto as Exhibit "A" and incorporated herein by reference thereto and represented here as if fully set forth. A true and correct copy of the criminal court docket is attached hereto as Exhibit "B" and incorporated herein by reference thereto and represented here as if fully set forth.

30.     On February 15, 2011, Pratt had a follow-up conversation with the attorney, at which time Pratt was informed the attorney had only subpoenaed Rios for testimony as the arresting officer to be presented at summary trial in support of conviction on the disorderly conduct charge against Pratt.

31.     The material fact issue of the "arresting officer," as appearing on the face of the citation and on the face of the criminal docket was not in fact or material fact the same police officer who had

encountered Pratt, physically assaulted Pratt and caused injury to Pratt by the use of willful and intentional "excessive force" by handcuffing with intention to cause Pratt a physical injury and bodily harm.

32.     The delineation of the material facts of the complaint against the defendants is best made from a recitation of the events that occurred, beginning with Pratt's unlawful arrest without a warrant, assault and battery by Brimson, cruel and unusual punishment by Brimson, Rios, a black police sargeant, a group of officers of the 22nd District, City of Philadelphia, Mayor Nutter, the Philadelphia Police Department, Commissioner Ramsey, the 22nd Police District, and Captain Bard, and Pratt's release from unlawful arrest and detention, police brutality, and assault and battery.

33.     The citation alleges the offense of disorderly conduct, 18 Pa. C.S § 5503(a)(4), and other material fact allegations as elements of manifestly under the influence of alcohol or a controlled substance, 18 Pa. C.S § 5505, and failure to disperse upon official order, 18 Pa. C.S § 5502, and allegedly "interferring" (sic) with a police investigation, which is literally represented and presented in the citation as follows:

"DC#: 11-22-003643-01          Sector: A     Crime Code: 2404     Desc: Disorderly Conduct

NATURE OF THE OFFENSE
On (day, date and time) FRIDAY 01/14/2011 01:50 PM at (Incident Loc.) 2100 N BROAD ST. in the County of Philadelphia, the accused committed the following acts: (description of acts and specification of statute and sector number thereof)

ABOVE DATE TIME AND LOCATION AS RPC 2217 MY PARTNER AND I WERE INVOLVED IN A CAR STOP D C # 11/22/003643, WHEN THE DEFENDENT APPROACHED THE OPEN PASSANGER DOOR TO PATROL CAR. I IMEADIETLY SMELLED AN OVERWHELMING SENT OF ALCHOOL AND WHITE SPITTLE AROUND LIPS, CONSISTANT W/DRUG USE. THE DEF. WAS ASKED TO STEP AWAY FROM VEH SEVERAL TIMES BUT REFUSSED. P/O ESCORTED HIM TO SIDEWALK AN ATEMPTED TO ACERTAIN DEFT. DISRESS, WHICH WAS NOT A POLICE MATER. THE DEFT BECAME HOSTILE AND AGGRESSIVE AND WAS ADVISED HE WAS NOT ONLY PUBLICLY INTOXICATED BUT INTERFERRING W/ A POLICE INVEST. THE DEFT. WAS ASKED TO DISPERSSE SEVERAL TIMES AND REFUSED. DEFT. WAS ARRESTED AND TRANS TO 22 ND DIST."

34.     The above-forgoing fact statement is materially, matter of fact, and literally knowingly made as an unsworn falsification by the "arresting officers" to authorities in violation of 18 Pa. C.S § 4904. The material fact is that on Friday, January 14, 2011, Pratt did approach the police officers, Justin P. Rios ("Rios"), Badge No. 3330 and "Brimson or Brinson, Badge No. 4625 or 4265" while they were stopped a distance of appropriately twelve (12ft.) or fifteen (15ft.) behind a motor vehicle, in the middle of the block, on the southbound side of Broad Street, between Susquehanna Avenue and Diamond Street, at approximately 1:20 p.m. Brimson's or Brinson's ("Brimson") name and badge number is not exactly clearly known to Pratt because police officer Brimson, literally exploded into rage against Pratt, when Pratt was attempting to seek the assistance of the officers.

35.     Pratt was standing on the sidewalk, appropriately four (4ft.) to five (5ft.) feet away from the police car, slightly behind the open passenger door, making his present known to the officers, as they were in the patrol car, apparently having a light chat, between them that was not necessarily police business as the subject of the conversation between them. Brimson was in the passenger seat with a clip-board and documents or paperwork attached. The officers were casually talking and laughing in the conversational intercourse that was going on between them. Rios was seated in the driver's seat of the patrol car. The officers were attired in police uniform dress for "street patrol" with equipment of police batons, 9mm. semi-automatic firearms and ammunition, and bullet-proof vests.

36.     Pratt does not know what set Brimson off into what was a rage against Pratt. Brimson's conduct and actions towards Pratt were clearly to Pratt's understand nothing more or less than racial discrimination, age discrimination, and police brutality against Pratt by Brimson.

37.     Brimson got out of the patrol car, while Pratt was informing Brimson, that he would wait until the officers completed the traffic stop, came from the patrol car in the street to the sidewalk, got

physically in Pratt's face, grabbed Pratt by the lapels of his coat and right-shoulder, pushing and forcing

Pratt off the sidewalk, into the street, while twisting Pratt around, so that Pratt was no longer facing

Brimson.

38.     Pratt attempted to ask Brimson what was wrong with him to which Brimson responded

with more excessive physical force against Pratt, so that Pratt could not turn-around and face Brimson,

or see Brimson's name and badge number, which Pratt was attempting to do.

39.     Brimson slammed Pratt, face, chin and chest into the patrol car, holding Pratt against the

police car by the back of Pratt's coat collar, with Brimson's fist jammed into Pratt's neck, so Pratt could

not either move his head or attempt to turn-around and talk to Brimson.

40.     Brimson searched Pratt's person and pockets of his clothing, removing Pratt's

identification from his right-back pocket.

41.     Brimson then proceeded to forcefully place handcuffs on Pratt.

42.     Pratt did not attempt to resist what was evidently to Pratt Brimson's placing Pratt under

arrest. Brimson never said anything to Pratt, such as notice to Pratt that he was under arrest.

43      At no time did Brimson inform Pratt that he was "under arrest" of that Brimson stated to

Pratt, "you're under arrest."

44.     Brimson placed the hand-cuffs on Pratt with unnecessary and excessive force, moving the

hand-cuffs around and adjusting the notched lever of the hand-cuffs three times, finally closing the hand-

cuffs so that the hand-cuffs were immediately excruciatingly painful, which Brimson knowingly caused

by intentionally jamming the "bulging" contour of the hand-cuffs, where the inside and outside levers of

the handcuffs mechanically join together, into the location on Pratt's right-wrist where the Carpals and

Radius bones meet, forming the wrist.

45.     Brimson intentionally placed and tightened the hand-cuffs on both of Pratt's wrists as

tight as mechanically and physically possible, and until the levers of the handcuffs could not tighten another notch on the close-and-hold mechanism of the hand-cuffs.

46.     Brimson forced Pratt into the back-seat of the patrol car the passenger's seat had been positioned as far back as it could move toward the rear. Pratt was forced to sit in an physically contoured and awkward position, resulting in Pratt's right should being forced to be forward of his left shoulder and pulling on the right hand-cuff mechanism against Pratt's Ulna and Radius bones.

47.     Brimson placed the hand-cuffs on Pratt and forced Pratt into the back-seat of the patrol car at approximately 1:40 p.m. Brimson and Rios continued with the traffic stop for approximately another ten minutes, gave the vehicle driver documents (perhaps a traffic ticket and the driver's license).

48.     There was no conversation between Brimson and Rios, relating to conducting a police investigation or any criminal activity by anyone in the vehicle and subject of the traffic stop, while Pratt was falsely imprisoned in the back-seat of the patrol car, for approximately another ten (10) or fifteen (15) minutes before Rios made a u-turn on Broad Street.

49.     Pratt told Brimson the hand-cuffs were too tight and cutting into Pratt's wrists and stopping blood circulation to Pratt's hands, which were numb and causing not to be able feel to the touch in both hands.

50.     The drive to the 22nd Police District, located at 1747 N. 17th Street, at the intersection of 17th Street and Montgomery Avenue, had taken about another ten (10) or fifteen (15) minutes.

51.     Brimson and Rios were so casual about the drive to the 22nd District that Brimson had Rios to stop the patrol car while Brimson carried-on another casual conversation with an individual on the sidewalk somewhere in the area of the boundaries of Temple University Campus.

52.     When the patrol car arrived at the 22nd District, Rios stopped the patrol car in what appeared to be the drive-through or drive-way at the rear of the building.

53.       Rios and Brimson exited from the vehicle, in which the back windows were already shut tight, rolling the two front windows completely closed as they exited, then they both walked away from the patrol car and began what appeared to be casual conversations with other individuals dressed in police uniforms, and some of them did not appear to have weapons on them.

54.       Rios and Brimson did not remove Pratt from the back seat of the patrol car, when they exited from the patrol car.

55.       Pratt observed that Brimson had disappeared from his view and observations of activity among the police officers in the drive-way area, from the back-seat of inside the patrol car, presumably Brimson went inside the district building, and Rios continued to carry-on a casual conversation with various, different police officers in the driveway area.

56.       A significant period of time had transpired when Pratt realized that Brimson and Rios were not going to take Pratt out of the patrol car and into the district station building.

57.       Pratt vigorously shouted from inside the tightly-closed-windowed, patrol car for someone to remove Pratt from the patrol car and remove the handcuffs.

58.       Several police officers walked pass the patrol car, who definitely had heard Pratt's shouts, calling for someone to remove Pratt from the patrol car, escort Pratt into the district build, and remove the hand-cuffs.

59.       No police officer, who definitely had heard Pratt's shouts for help, did do anything to find-out what Pratt's shouting-out was about to loosen the hand-cuffs or remove Pratt from the patrol car to inside the police district building.

60.       By this point in time, Pratt had been in the excruciatingly painful handcuffs and in the physically contorted body position, so long Pratt was physically fighting against literally passing-out into unconsciousness, from excruciating, throbbing pain in both hands, wrists and forearms.

61.     Pratt's the right hand, wrist and forearm was significantly much more painful than the left hand, wrist and forearm.

62.     Pratt had remained hand-cuffed, sitting in the physically contorted body-position in the rear-seat of the patrol car for approximately two hours, when Pratt began kicking on the passenger's rear-door window with his right foot, for a period of about two or three minutes, when a police officer shouted-out to the other police officers in the drive-way area, "hey look, he's trying to kick the window out."

63.     A mob of about seven to ten police officers gathered around the passenger's side of the patrol car, just gauzing at Pratt, as he continued to kick on the patrol car rear window.

64.     Officer Rios was one of the group of police officers gathered around the patrol car. But, Rios acted like he didn't know what was going-on with Pratt.

65.     Pratt shouted to the group of officers gathered around the patrol car, "you'll got to get these hand-cuffs off of me, they're cutting off circulation in my hands." None of the police offers staring at Pratt did anything to help, or even inquire into what Pratt was shouting and kicking the rear window of the patrol car about, including Rios, who was still in the group of officers gathered around the patrol car.

66.     It became quit apparent to Pratt that none of the police officers gathered around the patrol, including Rios, were going to do anything to find-out Pratt's complaint or to inquire if Pratt needed any form of assistance.

67.     Pratt continued to kick against the door window with his right foot. Finally, a black police sergeant came into the crowd of police officers, opened the passenger rear door, pointing a taser gun at Pratt, shouting, "if you don't stop, I'm going to taser you!"

68.     Pratt shouted back, "you've already violated every right, legal and civil right, I ever had.

So, you might as well go ahead and taser me, or get me out of the back seat of this car, and get these hand-cuffs off of me."

69.      The sergeant continued to threaten Pratt with tasering him.

70.      Pratt shouted back at the sergeant, then you need to do that or kill me!"

71.      The black police sergeant then showed a look of genuine human concern on his face and put the taser gun away, turning to the police officers to his right, included in the group was officer Rios.

72.      The black police sergeant had an under-the-breathe slight interchange with the other police officers, leaned slightly inside the patrol car, telling Pratt to turn in a position to expose the hand-cuffs to the sergeant.

73.      The black police sergeant took-out a hand-cuff key, on a group of other keys and mercifully unloosened both of the handcuff's levers, about five notches each.

74.      Pratt then demanded to be taken out of the back-seat of the patrol car and taken into the district building, at which time the black police sergeant said, "that's alright, you're going to be cut loose."

75.      Pratt retorted back, "cut loose? I need to get out of this car, now!"

76.      The black police sergeant lowered the passenger rear window, closed the rear passenger door and walked away, as did the other police officers, who had been gathered around the patrol car, including Rios.

77.      Pratt observed a short time later, about ten or fifteen minutes, after the black police sergeant had loosened the hand-cuffs, police officers were appearing to arrive for a change of the work-shifts at the district

78.      Officer Rios returned to the patrol car and sat in the drivers seat, at which time for the first time, Rios spoke directly to Pratt, not about anything that had to do with the events involving

Pratt's arrest without a warrant, or the events that had, now, transpired over a time period of more than two hours, since Pratt was arrested by Brimson and placed in handcuffs, with excessive force.

79.     Pratt immediately began to tell Rios, "you know you're riding around with a racist. And, I know that you know it. You don't have to tell me, I know that you know this man is nothing but a racist."

80.     Rios said something in response that Pratt did not hear or dose not recall. Pratt told Rios, "that's alright, officer. I am talking to my lawyer about all of this."

81.     Pratt also very clearly said to officer Rios, "you know, officer that this is incident is going to come back around and bite you in the ass."

82.     Rios said in response to Pratt, "oh, yeah really. I don't think so."

83.     Pratt told Rios, "you know, I demanded to see the district commander, so that I could make a complaint against you and your partner. And, why have I been held in the back seat of this patrol car literally for hours, handcuffed and contoured in this back seat, like an animal?"

84.     Rios said to Pratt, "well, you've seen and spoken to my supervisor."

85.     Pratt said to Rios, "who? Who are you talking about?"

86.     Rios responded to Pratt, "my sergeant. Who just told you that you're goint to be released.

87.     Pratt told Rios, "I don't want to see no sergeant in the back seat of a patrol car in the drive-way of a parking lot of the district precint. The district commander is a captain, and that's who I demand to see. So, that I can file a formal complaint against you and your partner." Rios repeat, "like I said, you're getting released."

88.     Again for a second time, a few minutes to maybe a half an hour later, the black police sergeant came back to the patrol car, opened the rear door and told Pratt to get out of the car.

89.     Pratt got out of the patrol car, at which time, Pratt was surrounded by about seven or ten


more police officers. Rios got out of the driver's seat and joined the group of officers surrounding Pratt.

90.     Brimson appeared from the district building, came over to Pratt and the group of officers surrounding Pratt, waving in Pratt's face a paper, which Brimson did not state or explain what the paper was and Pratt could not see what was the paper or its content.

91.     Brimson folded the paper and shoved it into Pratt's right front pocket, while Pratt was still in the excruciatingly painful handcuffs.

92.     The black police sergeant told Pratt to turn-around and unlocked the hand-cuffs when Pratt did so.

93.     Brimson handed Pratt his identification that Brimson had taken from Pratt's possession, at the time of Pratt's arrest without a warrant, on Broad Street hours earlier.

94.     After the black police sergeant removed that hand-cuffs, he said to Pratt, "okay, Mr. Pratt, you're free to go," jestering with his hand in a dramatic pose or posture, indicating toward the drive-way leading to the street.

95.     It was very clear to Pratt that the group of police officers had gathered around Pratt in manner and group attitude that the only direction that Pratt was going to be allowed, by the group of police officer surrounding Pratt, to precede was only to leave the property of the 22nd district station, out the drive-way to the street, which Pratt did do.

96.     The time of Pratt's release from the false imprisonment by Rios and Brimson was approximately 4:20 p.m.

97.     Pratt had been held in the excruciatingly painful handcuffs and physically contorted body position in the back seat of the patrol car for approximately a tortuous, two hours and fifty minutes, or more.

98.     Pratt departed from the 22nd District parking lot drive-way, proceded to the Broad Street

Line and took the Broad Street Orange Line (broad street subway) back to center city, caught the 23
Bus southbound on 12th Street.

99.     Pratt arrived back at his residence, 1109 Christian Street, Philadelphia, at approximately
5:00 p.m. About a half an hour subway and bus ride from 17th Street and Montgomery Avenue.

100.     On Saturday, February 15, 2011, Pratt went to the Jefferson Hospital, Division of
Emergency Medicine, 1020 Samson Street for treatment of the injury caused by Brimson's assault and
battery and use of excessive force against Pratt with the intentional malicious and brutal placement of
the handcuffs on Pratt's wrist, with the willful intent and purpose to cause Pratt a physical injury.

101.     During the emergency attendance at Jefferson, X-rays of Pratt's right wrist were taken
and examined by emergency room doctors. The emergency room doctors did not find any bone fractures
in Pratt's right wrist.

102.     A follow-up referral was made for Pratt to be seen at the Hand Center of Philadelphia &
South Jersey, 834 Chestnut Street.

103.     on February 3, 201, Pratt was seen at the Hand Center, at which time Pratt's wrists were
examined by a hand specialist doctor.

104.     The hand specialist observed and made note in the examination report that scares caused
by the handcuffs, cutting into Pratt's skin, were still observable.

105.     The hand specialist made the observation and the notation of the scares observed on
Pratt's right wrist twenty (20) days after Brimson had willfully and intentionally placed and tightened the
handcuffs on Pratt's wrists for the purpose of causing Pratt suffer severe physical damage and injury.

106.     A follow-up appointment was made for Pratt for February 28, 2011, at which time Pratt
will undergo test of the Ulnar and Median Nerves in his hands and wrist to determine the cause of the
pain and numbness in Pratt's right hand and decreased use of his right hand.

107.     The damage caused to Pratt's right-wrist by Brimson's malicious and intentionally brutal placement of the hand-cuffs on Pratt's wrist involves the Ulnar Nerve, Medium Nerve and the Transverse Carpal Ligament, the right forearm and right shoulder. There is damage and pain to a lesser degree of intensity of pain caused to Pratt's left hand, wrist and forearm from the hand-cuffs than the degree of pain and injury to Pratt's right hand and wrist damage. Pratt has lost 30% to 40% of the use of his right hand, wrist and forearm resulting from the hand-cuffs placed by Brimson.

108.     Pratt did not read the paper that Brimson had shoved into Pratt's pocket, until on Sunday, January 16, 2011, at which time Pratt came to know of the charge of disorderly conduct that had been made against him by officer Rios, to Pratt's surprise.

109.     Pratt was surprised by the citiation's charges against Pratt were lodged against Pratt by Rios, who Pratt never had any interaction with, and only in conversation, except when Rios and Pratt had the verbal exchange, when Rios was in the front, driver's seat of the patrol car and Pratt was in the rear seat of the patrol car, in the drive-way of the 22nd district.

110.     The citation and the criminal docket show that officer Rios is the arresting police officer.

111.     Pratt appeared before the Philadelphia Municipal Court, Community Court, plead not guilty to the charge of Disorderly Conduct, and the Office of the District Attorney of Philadelphia set a trial date for February 8, 2011.

112.     Pratt filed a motion for continuance of the trial until March 8, 2011, for reason of the injury to Pratt's hands and wrists hinder his ability to prepare a defense to the charge of Disorderly Conduct and the on-going treatment for such injury is also very time consuming, which also interferes with Pratt's ability to only concentrate on preparing to defend himself against the false charges against made by officer Rios.

## COUNT 1: <u>VIOLATION OF 42 U.S.C. SEC. 1983</u>

## (DUE PROCESS AND EQUAL PROTECTION CLAUSES)

113.     Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 112 above with the same force and effect as if herein set forth.

114.     At all relevant times herein, Plaintiff had a right under the due process and equal protection clauses of the state and federal constitutions not to be deprived of his constitutionally protected interest in his liberty, freedom, pursuit of happiness, freedom from false arrest, unlawful detention, assault and battery, use of excessive force, and denial of substantive and fundamental due process and equal protection of the laws. U.S.C. Const. Amend. 4th, 6th, 8th and 14th; PA. Const., Art. I, §§ 1, 8, 9 and 26.

115.     At all times relevant herein, the defendants were state actors in the capacity of an elected mayor, an appointed Police Commissioner, a police district commander, supervising police sergeant, and street patrol police officers of the 22nd Police District and their conduct was subject to a cause of action and relief by the court pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1988(a).

116.     The willful and intentional acts, actions, and conduct towards Pratt was malicious and inflicted upon Pratt by Brimson and Rios to cause Pratt physical injury and calculated by Brimson and Rios to deny Pratt of substantive and fundamental due process and equal protection of the laws, statutes and Constitution of Pennsylvania and the laws, statutes and Constitution of the United States.

117.     The only explanation is that the Brimson and Rios were clearly discriminating against Pratt because defendants' conduct was wholly motivated by an evil motive and intent that involved reckless or callous indifference to Pratt's federally protected rights and defendants' total disregard for Pratt's human rights and civil rights, the laws of the Commonwealth, which as Mayor of Philadelphia, Nutter has a duty to uphold, and the police officer defendants of the Philadelphia Police Department are all worn to uphold the laws violated here.

Civil Rights Violation Complaint                    23

118.       Brimson and Rios and all other defendants: the City of Philadelphia, a mayor of Philadelphia, a Police Commissioner, a Police Department, a police District Commander, a police district, and twelve police officers assigned to the 22nd Police District are entities organized and operational "under color of law" and the individual defendants are all State actors with the powers of the State as are found in the laws, statutes, Constitution of Pennsylvania and The Philadelphia Home Rule Charter.

119.       The defendant entities acting under the color of law and the individual Defendant State actors worked a denial of Pratt's rights, privileges, or immunities secured by the United States Constitution or by Federal law and guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, to wit, they sought to cause Pratt physical injury and deprive Pratt of his civil right of substantive due process and fundamental equal protect of law.

120.       As a result of Defendants' concerted unlawful and malicious conduct, Pratt was both deprived of his rights to equal protection of all the laws and to due process of law, of his right to safety in his physical being, free from a deprivation of his liberty, freedom and pursuit of happiness, the result of which, in this case, the due course of justice was impeded, in violation of the*** Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States: First, Eighth, Ninth and Twenty-Sixth Sections of the Constitution of the Commonwealth of Pennsylvania; and 42 U.S.C. §§ 1983 and 1985(3).

121.       The defendants intentionally interfered with Pratt's exercise and enjoyment of his clear and established rights secured by the state and federal constitutions or laws of the United States and/or the Commonwealth of Pennsylvania, and thereby deprived him of those rights and caused Pratt's injuries complained.

122.       Pratt was harmed, has incurred considerable legal debt which would not otherwise have

been incurred, and has suffered the loss of confidence in and feelings of betrayal by the City of

Philadelphia, the Philadelphia Police Department, Mayor Nutter, Commissioner Ramsey, Captain Bard,

Officer Brimson, Officer Rios, John Doe black Police Sergeant, and a group of police officers, as well as

suffering shock and disbelief, and emotional scarring, all compensable as emotional distress, and other

damages.

WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against the

defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of

$5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for

punitive damages in an amount to be determined by the jury, plus the costs of this action, including

attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 2: VIOLATION OF 42 U.S.C. SEC. 1985(3) (CONSPIRACY) COMMON LAW CONSPIRACY

123.      Plaintiff repeats and realleges and incorporates by reference the allegations in

paragraphs 1 through 122 above with the same force and effect as if herein set forth.

124.      The conspiratorial purpose was an animus racial discrimination to violate Plaintiff's

civil rights and to conceal the fact by falsely charging Pratt with disorderly conduct to have to

defend against in a summary trial.

125.      Brimson and Rios, individually and collectively, undertook the first step in the conspiracy

when Brimson bolted from the patrol car and attacked Pratt, placed Pratt in handcuffs with excessive

force and began on a course of acts, actions and conduct the defendants decided a charge of disorderly

conduct against Pratt without proof was sufficient to cause Pratt to enter a "guilty plea" in a summary

proceeding and enter the D.A.'s program of community service and a fine and withdrawal of the charges

by the attorney for the Commonwealth, upon Pratt's completion of the requirements of the sentence

imposed by the court, upon entering a guilty plea to the summary charge issued by Brimson and Rios.

126.     By collectively collaborating and colluding to knowingly make a false statement on the face of the citation in violation of the penalties of Section 4904 of the Crimes Code (18 Pa. C.S. §4904), relating to unsworn falsification to authorities, which Brimson and Rios made, issued to Pratt, and filed in this case to commence the summary proceedings against Pratt, on January 14, 2011, perpetrating a fraud upon the court, which if proven by the attorney for the Commonwealth and believed by the court would work conviction of Pratt on the false charge of disorderly conduct, as charged by Brimson and Rios.

127.     If Pocahontas's misrepresentations were persuasive and if Smith was given at least half the equitable interest in the property, the court would have required Smith pay Pocahontas $250,000, more than the actual fair market value for the entire property.

128.     Rios' vouching for Brimson's truthfulness and the accuracy of the content on the face of the citation and Brimson's vouching for Rios' alleged arrest of Pratt for reasons set forth in the content of the citation Brimson and Rios conspired with each other to deceive both the court and Pratt.

129.     Within hours of Pratt's false arrest without a warrant and three hours or longer of Pratt's unlawful detention in the back seat of a patrol car, manacled in excruciatingly painful handcuffs, placed on Pratt with willful and intentional excessive force to cause Pratt a physical, bodily injury and damage, as Brimson and Rios had intended and anticipated. Brimson and Rios conspiratorially decided to enter the information on the face of the citation and agreed to commingle their prevarications in the content and language used in the citation's "Nature of Offense", as knowingly false where the alleged material elements of violations of Pa. C.S. §§ 5502, 5503 and 5505. .

130.     The scheme of the conspiracy was **(1)** to conceal and cover-up Brimson unprovoked psychological or mental explosion and physical attack against Pratt, **(2)** to misrepresent and falsely

assert the elements of the Crimes Code to initiate the summary proceedings against Pratt to either plead guilty to the disorderly conduct charge and accept the sentence of the court on the attorney for the Commonwealth's recommendation or plead not guilty and defend himself in a summary trial against the false charges, and **(3)** to persuade the court at summary trial that their knowingly false and conspiratorially contrived unsworn statement on the face of the citation in the content of the Nature of Offense are truthful, accurate and correct.

131.     Brimson's and Rios' collective and collaborative, knowingly false statements, and their stated misrepresentations intended to deceive the court, and willful intention to cause Pratt a physical injury and damage that permanently deprives Pratt of his expectation of physical safety and freedom from harm the specific harm and damages such as caused Pratt by defendants' conspiracy to conceal and cover-up their known violations of Pratt's right to freedom or constitutional protection from defendant's invidiously animus discrimination against Pratt because of Pratt's race, as a black man, and because of Pratt's age as an elderly, senior citizen, resident in the City of Philadelphia .

132.     The above acts were some of the steps in a conspiracy by Brimson and Rios to commit fraud on the court and against Pratt, if not criminal fraud with the requisite *mens rea*, upon Pratt, as Brimson's and Rios' intended victim of their deceitful misrepresentations of knowingly, making unsworn falsification to authorities as evidence and/or proof of Pratt's guilt, as charged in the citation's Nature of Offense.

133.     The misrepresentations made by Brimson and Rios were deliberate and were designed with the specific intent to conceal and cover-up Brimson's and Rios' malicious and evil conduct towards and against Pratt, for no justifiable reason that is supported by any form of proof thereof found in the record of this case.

134.     The defendants intentionally interfered with Pratt's exercise and enjoyment of his clear

and established rights secured by the state and federal constitutions or laws of the United States and/or the Commonwealth of Pennsylvania, and thereby deprived Pratt of those rights and caused Pratt the injuries complained of here as a result.

135.    Pratt is a member of the class of black men or African American males, who suffer a class-based group of individually targeted victims of an invidiously animus racial discrimination that exists in the operation and application of Pennsylvania's Non-Traffic Statutory Offense procedures, specifically, Disorderly Conduct. 18 Pa. C.S. § 5503(a)(4).

136.    The conspiracy undertaken by Brimson and Rios was not private between them as the prevarication that they presented to authorities was a public, criminal process matter that was in fact a private conspiracy in violation of 42 U.S.C. § 1985(3) and an animus racial discriminatory evil motive and purpose an invidiously discriminatory animus that lay behind Brimson's and Rios' acts, actions, and individually and collective conduct towards Plaintiff, which was at all times a conspiracy "aimed at interfering with rights of Plaintiff that are "protected against private, as well as official, encroachment by all defendants as state actors, carrying-out a conspiracy against Plaintiff.

WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against the defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 3: COMMON LAW CONSPIRACY/CONCERT OF ACTION TO CONCEAL POLICE BRUTALITY AND POLICE CORRUPTION AGAINST PLAINTIFF

137.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 136 above with the same force and effect as if herein set forth.

138.     At no time during the course of Plaintiff's false arrest and unlawful detention, handcuffed in the back seat of Brimson's and Rios' patrol car, in the parking lot of the 22nd District driveway for more than three hours, did any of the defendants act with negligence that either caused or resulted in the injury willfully and intentionally inflicted upon Plaintiff by defendants, specifically, Brimson and Rios.

139.     The defendants City of Philadelphia, Philadelphia Police Department, Mayor Nutter, Commissioner Ramsey, 22nd Police District, Captain Bard, and John Doe black Sergeant ("Brimson's and Rios' superiors") are fully aware and knowledgeable that "the conduct of the employee(s), under their management and supervision, which gave rise to the claims brought by Plaintiff were not authorized or required by law, or that their employees, responsible Plaintiff's injury, in good faith reasonably believed the conduct complained of by Plaintiff was authorized or required by law.

140.     Brimson's and Rios' superiors knew or should have known, as well as Brimson and Rios knew or should have known, the acts of Brimson and Rios, as the proximate cause of Plaintiff's injury, which gave rise to the claim for relief against all defendants was not within the policymaking discretion granted to either Brimson's and Rios' supervisors or to Brimson and Rios by law.

141.     ... all acts of the entities and/or individual members of Brimson's and Rios' supervisors or of the directives, policies, procedures and management provisions established by Brimson's and Rios' supervisors are not deemed to be within the policymaking discretion granted to such entities or individuals. as Brimson's and Rios' supervisor(s). by law.

142.     The Political Subdivision Tort Claims Act (the "Tort Claims Act") provides that, "An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are *within the scope of his office or duties* only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." (Emphasis mine).

143.     The Tort Claims Act does not apply as a defense to this complaint were as, specifically, Brimson and Rios wholly "... acted with actual malice and knowingly committed willful misconduct..."

144.     Brimson and Rios acted willfully and intentionally to violate Plaintiff's civil rights and to cause a physical, bodily injury that bars all defendants from the use of or reliance upon the immunity that generally attaches to a local government employee in the performance of her official duties.

145.     The Tort Claims Act only applies to an act of an employee of a local agency responsible for injury to an individual plaintiff that are the results of said employee's negligent acts, where it provides that, "..."negligent acts" shall not include acts or conduct which constitutes *a crime, actual fraud, actual malice or willful misconduct...*" 42 Pa. C.S. § 8542(a)(2). (Emphasis mine).

146.     The scheme of the conspiracy was **(1)** to conceal and cover-up Brimson unprovoked psychological or mental explosion and physical attack against Pratt, **(2)** to misrepresent and falsely assert the elements of the Crimes Code to initiate the summary proceedings against Pratt to either plead guilty to the disorderly conduct charge and accept the sentence of the court on the attorney for the Commonwealth's recommendation or plead not guilty and defend himself in a summary trial against the false charges, and **(3)** to persuade the court at summary trial that their knowingly false and conspiratorially contrived unsworn statement on the face of the citation in the content of the Nature of Offense are truthful, accurate and correct.

147.     An example of the common law conspiracy/concert of action to conceal police brutality and police corruption against plaintiff is the evil motive and unlawful purpose of the ordeal of physical injury and cruel and unusual punishment Brimson and Rios willfully and intentionally inflicted upon Pratt, by the imposition of cruel and unusual of more than three hours of excruciating pain caused by Brimson's use of excessive force with the handcuffs placed on Plaintiff, while detained in the back seat of Brimson's and Rios' patrol car.

WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against the defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 4: COMMON LAW ASSAULT & BATTERY (USE OF EXCESSIVE FORCE) FALSE ARREST, UNLAWFUL DETENTION AND MALICIOUS PROSECUTION

148.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 147 above with the same force and effect as if herein set forth.

149.    At no time during the course of Plaintiff's false arrest and unlawful detention, handcuffed in the back seat of Brimson's and Rios' patrol car, in the parking lot of the 22nd District driveway for more than three hours, did any of the defendants act with negligence that either caused or resulted in the injury suffered by Plaintiff that was willfully and intentionally inflicted upon Plaintiff by defendants, specifically by the willful and intentional acts, actions and individual or collective conduct of Brimson and Rios towards Plaintiff.

150.    Brimson's and Rios' acts, actions, and individual and/or collective official conduct as Philadelphia Police Officers caused Plaintiff to sustain and suffer the injuries complained of as a result of Brimson's willful and intentional use of excessive force for the specific purpose to cause Plaintiff to sustain and suffer a physical, bodily injury to Plaintiff's hands, wrists and arms from the assault and battery upon Plaintiff by Brimson's placement of the handcuffs on Plaintiff's wrists, through adjustment and movement of the handcuffs on Plaintiff's wrists to such a position with the "notch" in the joining of the inside and outside levers of the manacles placed in the joint where Plaintiff's Carpals and Radius bones meet, forming Plaintiff's right wrists, then tightening the handcuffs' levers to the tightest position

possible on the mechanical, notch-locking mechanism, until there were no clicks left to close and the tempered steel of the handcuffs cut into Plaintiff's flesh, on both wrists.

151.     At all times, during the course of Brimson's and Rios' acts, actions, and individual and collective conduct while engaging Plaintiff, on January 14, 201, willfully and intentionally engaged in what Brimson and Rios knew, or should have known was false arrest/imprisonment of Plaintiff, where Brimson and Rios also knew, or should have known, individually and/or collectively, they had no "probable cause" to arrest Plaintiff without a warrant.

152.     Brimson and Rios, both individually and collectively, had actual, first-hand knowledge and evidence of their total lack of any probable cause to arrest and charge Plaintiff with disorderly conduct; and furthermore, Brimson and Rios knew they intended to charge Plaintiff with disorderly conduct to conceal their false arrest, assault and battery and unlawful detention of Plaintiff, for no reason of law or lawful purpose in the capacity of their employment as Philadelphia Police Officers of the 22nd Police District, who knowingly lacked probable cause to arrest Plaintiff, commit an assault and battery against Plaintiff, and charge Plaintiff with a summary offense that Brimson and Rios knew that Plaintiff never committed and of which had no culpability.

153.     Brimson's and Rios' actual knowledge of their lack of probable cause to arrest without a warrant and charge Plaintiff with disorderly conduct was, on their part, a clear and unequivocal "willful misconduct in the context of the performance of Brimson's and Rios' police duties must here extend to the full panoply of their, individual and collective police activities, including not only the physical acts, actions, and individual and collective conduct associated with Plaintiff's arrest and detention but also Brimson's and Rios' acts, actions and individual and collective conduct associated with charging Plaintiff with the commission of the crime of disorderly conduct, publicizing the charge alleged against Plaintiff and triggering a prosecution by the attorney for the Commonwealth for the alleged violation of 18 Pa.

C.S. § 5503(a)(4).

154.     Brimson's and Rios' acts, actions, and individual and collective conduct towards Plaintiff causing Plaintiff to suffer assault and battery by use of excessive force, malicious prosecution, abuse of process, defamation, false light and conspiracy, which Brimson and Rios not only intended to falsely accuse Plaintiff of and cause Plaintiff's prosecute, which Brimson and Rios did so with actual malice that Brimson and Rios both personally believing that probable cause was lacking for the charge of disorderly conduct against Plaintiff and Plaintiff's prosecution resulting therefrom.

155.     In the context of Plaintiff's arrest, Brimson and Rios willfully and intentionally, as willing actors are liable for Plaintiff's false imprisonment where Brimson and Rios caused Plaintiff's false arrest for the purpose of concealing the assault and battery and use of excessive force against Plaintiff and wholly lacking probable cause for Plaintiff's false arrest and unlawful detention, which Brimson and Rios knew, or should have known, their arrest and detention of Plaintiff was a falsification and fraudulently charged against Plaintiff where Brimson and Rios made the arrest of Plaintiff, knowingly without privilege to do so.

156.     Brimson and Rios knowingly restrained Plaintiff unlawfully in excruciatingly painful handcuffs, placed on Plaintiff with excessive force intended to cause Plaintiff a physical bodily injury, detained in the back seat of Brimson's and Rios' patrol car, with all the windows tightly closed, in an intentionally dangerous situation for Plaintiff, as a black man 66 years of age, which Brimson and Rios knew had created a circumstance exposing Plaintiff to risk of serious bodily injury, which Plaintiff did suffer at Brimson's and Rios' hands and acts, actions, and individual and collective conduct towards Plaintiff.

157.     Brimson and Rios knowingly restrained Plaintiff unlawfully in excruciatingly painful handcuffs, placed on Plaintiff with excessive force intended to cause Plaintiff a physical bodily injury,

detained in the back seat of Brimson's and Rios' patrol car for three hours or more, with all the windows tightly closed, in an intentionally dangerous situation for Plaintiff, as a black man 66 years of age, which Brimson and Rios knew was wholly unlawfully, so as to interfere substantially with Plaintiff liberty.

158.     At all times, Brimson and Rios acted against Plaintiff knowing that they lacked probable cause to arrest Plaintiff without a warrant and charge Plaintiff with the alleged offense of disorderly conduct, which Brimson and Rios did knowingly and collectively do to Plaintiff in order to conceal and to cover-up the assault and battery and use of excessive force by Brimson against Plaintiff.

159.     All of the defendants' individual and collective conduct, jointly and severally, constituted a crime, actual fraud, actual malice or willful misconduct intentionally carried-out against Plaintiff to concealment and cover-up of the willful and intentional violations of Plaintiff's civil rights by the defendants.

160.     An example of the common law conspiracy/concert of action to conceal police brutality and police corruption against plaintiff is the evil motive and unlawful purpose of the ordeal of physical injury and cruel and unusual punishment Brimson and Rios willfully and intentionally inflicted upon Pratt, by the imposition of cruel and unusual of more than three hours of excruciating pain caused by Brimson's use of excessive force with the handcuffs placed on Plaintiff, while detained in the back seat of Brimson's and Rios' patrol car.

WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against the defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 5: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

161.     Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 160 above with the same force and effect as if herein set forth.

162.     At no time during the course of Plaintiff's false arrest and unlawful detention, handcuffed in the back seat of Brimson's and Rios' patrol car, in the parking lot of the 22nd District driveway for more than three hours, did any of the defendants act with negligence that either caused or resulted in the injury suffered by Plaintiff that was willfully and intentionally inflicted upon Plaintiff by defendants, specifically by the willful and intentional acts, actions and individual or collective conduct of Brimson and Rios towards Plaintiff.

163.     At all times throughout Plaintiff's false arrest, assault and battery by excessive force, unlawful detention, conspiratorial false charge of disorderly conduct, and malicious prosecution all of the Defendants' conduct, specifically Brimson and Rios, was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

164.     The actions of the Defendants were the cause of Smith's distress.

165.     Plaintiff is a reasonable man.

166.     Plaintiff is a sixty-six year old, black man, who has no prior criminal charges or arrest by police.

167.     The emotional distress sustained by Plaintiff was severe and of a nature that no reasonable man could be expected to endure.

168.     As a result of the Defendants' extreme and outrageous conduct, Plaintiff has suffered and with a high degree of likelihood, will continue to suffer mental pain and anguish, embarrassment, humiliation that Plaintiff was so betrayed by the City of Philadelphia, the Mayor of Philadelphia, the Philadelphia Police Department, Commissioner Ramsey, Captain Bard, the defendant police officers,

specifically Brimson and Rios, Philadelphia police officers, generally, that Plaintiff was so betrayed by

the City of Philadelphia, Philadelphia's mayor, Philadelphia's Police Commissioner and police department

and the criminal judicial system and process, Plaintiff suffers severe emotional trauma.

169.    Brimson and Rios did, both individually and collectively, intentionally and deliberately

inflicted emotional distress on Plaintiff by assault and battery, false arrest and imprisonment, unlawful

detention, interfering with Plaintiff's civil rights and conspiring against Plaintiff, thereby destroying

Plaintiff's trust in the City of Philadelphia, Mayor Nutter, the Philadelphia Police Department,

Commissioner Ramsey, and police officers of the Philadelphia Police Department, in general, and

Captain Bard and police officers of the 22nd Police District, with particularity and necessary due

diligence for police corruption.

WHEREFORE, Plaintiff demands Judgment, including interest, against all defendants, jointly and

severally, for actual, general, special, compensatory damages in the amount of $5,000,000, plus the costs

of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

### COUNT 6: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

170.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs

1 through 169 above with the same force and effect as if herein set forth.

171.    All defendants, specifically Brimson and Rios, continually negligently inflicted emotional

distress upon Plaintiff.

172.    All defendants, specifically Brimson and Rios, had a continuing affirmative duty to

perform their professional duties as mayor, police commissioner and member police officers of the

Philadelphia Police Department in such a manner as not to inflict emotional distress on Pratt.

173.    All defendants, specifically Brimson and Rios, had a continuing affirmative duty to

perform their professional duties as mayor, police commissioner and member police officers of the

Philadelphia Police Department in such a manner as not to have willfully and intentionally breached their duties to Plaintiff's as a senior citizen member of the City of Philadelphia community.

174.      Plaintiff has been caused to suffer not only physical symptomatologies but also a severe bodily injury to both of Plaintiff's wrists, more severe physical, bodily injury was sustained by Plaintiff's right-hand, as a consequence of the physical, bodily injury intentionally inflicted upon Plaintiff by Brimson's and Rios' animus racial discriminatory conduct and actions towards Plaintiff that allowed Brimson and Rios to willfully and intentionally violate Plaintiff's civil rights and  breach their sworn oath of the duty to "serve and protect" the citizens of the City of Philadelphia.

175.      Plaintiff was, is, and, with a high degree of likelihood, will continue to be inflicted with emotional distress due to the negligence of all defendants, except Brimson and Rios, whose infliction of the pain and suffering upon Plaintiff and complained of in this complaint, was willful and intentional to cause Plaintiff to suffer the injuries complained of herein.

176.       As a result of the Defendants' negligent conduct, Plaintiff has suffered and with a high degree of likelihood, will continue to suffer physical symptomatologies, such as severe, continuous headaches and pains in his extremities, extreme weight loss, pain, anguish, severe emotional trauma, embarrassment, and humiliation that Plaintiff was so betrayed by the City of Philadelphia, the Mayor of Philadelphia, the Philadelphia Police Department, Commissioner Ramsey, Captain Bard, the defendant police officers, specifically Brimson and Rios, Philadelphia police officers, generally, that Plaintiff was so betrayed by the City of Philadelphia, Philadelphia's mayor, Philadelphia's Police Commissioner and police department and the criminal judicial system and process, Plaintiff suffers severe emotional trauma

WHEREFORE, Plaintiff demands judgment, including interest, against all defendants in an amount deemed by this Court to be just and fair and in any other way in which the Court deems appropriate.

## COUNT 7: "WILLFUL BLINDNSS" NEGLIGENT ALLOWANCE OF
## POLICE OFFICERS' TORTIOUS CONDUCT TO VIOLATE PLAINTIFF'S CIVIL RIGHTS

177.     Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 176 above with the same force and effect as if herein set forth.

178.     All defendants, except Brimson and Rios, who acted at all times knowingly in violation of Plaintiff's rights as complained of, continually negligently inflicted emotional distress upon Plaintiff.

179.     All defendants, specifically Brimson and Rios, had a continuing affirmative duty to perform their professional duties as mayor, police commissioner and member police officers of the Philadelphia Police Department in such a manner as not to inflict emotional distress on Plaintiff.

180.     All defendants as Brimson's and Rios' supervisors and/or Philadelphia Police Department superiors of Brimson and Rios, including Mayor Nutter, Commissioner Ramsey, Captain Bard, City of Philadelphia, Philadelphia Police Department, 22nd Police District, and PPD police officer management and department policy-makers wholly failed to train and monitor, specifically Brimson and Rios, street patrol police officers charged with the law enforcement officer power to make an arrest without a warrant and literally, summarily charge a citizen, usually an indigent individual, with a summary offense in a situation and under circumstances in which it is the word of the arresting police officer against the word of the individual arrested; i.e., Plaintiff as defendant in the subsequent summary process, where the defendant is offered a form of Advanced Rehabilitative Disposition (ARD) program, requiring a defendant to enter a guilty plea and comply with paying a fine, performing community service, and "expungement" of the "record" of the arrest upon completion of the requirements imposed by the court.

181.     The Community Court judge, even announces at "Arraignment Status" that defendants should take advantage of the guilty plea and community service program of the attorney for the Commonwealth, even if they (defendants) that they are "not guilty."

182.      Police officer corruption, as complained of in this complaint and case, and abusive misuse of the summary offense charge of "disorderly conduct" by Philadelphia police officers, who are fully aware that the criminal justice process in the disposition of this summary offense charge is more often than not and statistically predominately an arresting police officer's word against the summarily charged defendant's word, who has to come before the Community Court without the benefit of legal counsel, and enter a "guilty plea" to a criminal charge the defendant never committed, in order to avoid a criminal record of the unlawful and illegal arrest by police officers who know the system allows them to conceal and cover-up the violations of the alleged defendant's civil rights, but the truth is that it is merely the police officer's word, and perhaps the police officer's partner's word against a defendant, without any witnesses to the alleged disorderly conduct summary offense, as is the matter of fact in this case.

183.      At all times, Brimson's and Rios' supervisors and superiors had an objective duty and responsibility to Plaintiff to know Brimson's and Rios' conduct and abusive misuse of the summary offense charge of disorderly conduct was in violation of Plaintiff's civil rights, specifically freedom from Brimson's and Rios' illegal and unlawful assault and battery upon Plaintiff by Brimson's excessive force against Plaintiff that resulted in physical, bodily injury to Plaintiff, as Brimson and Rios willfully and intentionally subjected Plaintiff to such assault and battery and physical, bodily injury as complained of herein

WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against the defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 8:  INVIDIOUS ANIMUS DISCRIMINATORY

## VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHT

184.     Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 183 above with the same force and effect as if herein set forth.

185

.All defendants, except Brimson and Rios, who acted at all times knowingly in violation of Plaintiff's rights as complained of, continually negligently inflicted emotional distress upon Plaintiff.

186.     All defendants, specifically Brimson and Rios, had a continuing affirmative duty to perform their professional duties as mayor, police commissioner and member police officers of the Philadelphia Police Department in such a manner as not to either willfully and intentionally and/or negligently did violate Plaintiff's U.S. Constitution, Fourth Amendment protected right to freedom from illegal seizure of Plaintiff's physical body and assault and battery upon Plaintiff by Brimson's and Rios' use of excessive force to carry-out a knowingly unlawful detention, cruel and unusual punishment, and other defendant's malicious prosecution of Plaintiff, on grounds of Brimson's and Rios' known unsworn falsification made to authorities in the concealment and cover-up of Brimson's and Rios' illegal and unlawful and illegal assault and battery, false arrest, unlawful detention and malicious prosecution of Plaintiff for reasons of and on grounds of Brimson's and Rios' violation of Plaintiff's right to due process protected by the Fourth Amendment of the U.S. Constitution.

187.     The U.S. Constitution, Fourth Amendment provides that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

188.     Brimson and Rios caused Plaintiff's arrest without a warrant and knowingly without probable cause and in the clear and unequivocal commission of willful misconduct, perpetrated to

Civil Rights Violation Complaint                    40

fraudulently charge Plaintiff with the alleged disorderly conduct, where the only evidence is the citation

on its face and the statements and/or testimony of the arresting police officer and his partner verses

Plaintiff's truthful statements that he never approached Brimson and Rios with the intent to engage in

the disorderly conduct alleged by Brimson and Rios.

189.      Brimson and Rios caused Plaintiff's arrest without a warrant, knowingly without

probable cause, and knowingly in violation of Plaintiff's guaranteed protected right to freedom from

illegal search and seizure in the arrest without a warrant and charge of a summary offense against

Plaintiff.

190.      As a result of the Defendants' extreme and outrageous conduct, Plaintiff has suffered and

with a high degree of likelihood, will continue to suffer mental pain and anguish, embarrassment,

humiliation that Plaintiff was so betrayed by the City of Philadelphia, the Mayor of Philadelphia, the

Philadelphia Police Department, Commissioner Ramsey, Captain Bard, the defendant police officers,

specifically Brimson and Rios, Philadelphia police officers, generally, that Plaintiff was deprived of his

civil rights by the City of Philadelphia, Philadelphia's mayor, Philadelphia's Police Commissioner and

police department and the criminal judicial system and process, Plaintiff suffers severe animus racial

discrimination, as a result of Defendant's deprivation of Plaintiff's Fourth Amendment rights.

WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against the

defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of

$5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for

punitive damages in an amount to be determined by the jury, plus the costs of this action, including

attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 9:  INVIDIOUS ANIMUS DISCRIMINATORY
## VIOLATION OF PLAINTIFF'S FIFTH AMENDMENT RIGHT

191.     Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 190 above with the same force and effect as if herein set forth.

192.     All defendants, except Brimson and Rios, who acted at all times knowingly in violation of Plaintiff's rights as complained of, continually negligently inflicted emotional distress upon Plaintiff.

193.     All defendants, specifically Brimson and Rios, had a continuing affirmative duty to perform their professional duties as mayor, police commissioner and member police officers of the Philadelphia Police Department in such a manner as not to either willfully and intentionally and/or negligently did violate Plaintiff's U.S. Constitution, Fifth Amendment protected right not to be deprived of life, liberty, or property, without due process of law by Brimson's and Rios' use of excessive force to carry-out a knowingly unlawful detention, cruel and unusual punishment, and other defendant's malicious prosecution of Plaintiff, on grounds of Brimson's and Rios' known unsworn falsification made to authorities in the concealment and cover-up of Brimson's and Rios' illegal and unlawful assault and battery, false arrest, unlawful detention and malicious prosecution of Plaintiff for reasons of and on grounds of Brimson's and Rios' violation of Plaintiff's right to due process protected by the Fifth Amendment of the U.S. Constitution.

194.     The U.S. Constitution, Fifth Amendment provides, in pertinent part, that: "No person shall... be deprived of life, liberty, or property, without due process of law."

195.     Brimson and Rios caused Plaintiff's arrest without a warrant and knowingly without probable cause and in the clear and unequivocal commission of willful misconduct, perpetrated to fraudulently charge Plaintiff with the alleged disorderly conduct, where the only evidence is the citation on its face and the statements and/or testimony of the arresting police officer and his partner verses Plaintiff's truthful statements that he never approached Brimson and Rios with the intent to engage in the disorderly conduct alleged by Brimson and Rios.

196.     Brimson and Rios caused Plaintiff's arrest without a warrant, knowingly without probable cause, for an evil motive and willful misconduct, and knowingly in violation of Plaintiff's guaranteed protected right to due process of law in the arrest and charge of a summary offense against Plaintiff.

197.     As a result of the Defendants' extreme and outrageous conduct, Plaintiff has suffered and with a high degree of likelihood, will continue to suffer mental pain and anguish, embarrassment, humiliation that Plaintiff was so betrayed by the City of Philadelphia, the Mayor of Philadelphia, the Philadelphia Police Department, Commissioner Ramsey, Captain Bard, the defendant police officers, specifically Brimson and Rios, Philadelphia police officers, generally, that Plaintiff was deprived of his civil rights by the City of Philadelphia, Philadelphia's mayor, Philadelphia's Police Commissioner and police department and the criminal judicial system and process. Plaintiff suffers severe animus racial discrimination, as a result of Defendant's deprivation of Plaintiff's Fifth Amendment rights.

WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against the defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 10:  INVIDIOUS ANIMUS DISCRIMINATORY VIOLATION OF SIXTH AMENDMENT RIGHT

198.     Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 197 above with the same force and effect as if herein set forth.

199.     All defendants, except Brimson and Rios, who acted at all times knowingly in violation of Plaintiff's rights as complained of, continually and knowingly violated Plaintiff's protected civil right.

200.     All defendants, specifically Brimson and Rios, had a continuing affirmative duty to

perform their professional duties as mayor, police commissioner and member police officers of the Philadelphia Police Department in such a manner as not to either willfully and intentionally and/or negligently did violate Plaintiff's U.S. Constitution, Fifth Amendment protected right not to be deprived of life, liberty, or property, without due process of law by Brimson's and Rios' use of excessive force to carry-out a knowingly unlawful detention, cruel and unusual punishment, and acts of other defendants' malicious prosecution of Plaintiff, on grounds of Brimson's and Rios' known unsworn falsification made to authorities in the concealment and cover-up of Brimson's and Rios' illegal and unlawful assault and battery, false arrest, unlawful detention and malicious prosecution of Plaintiff for reasons of and on grounds of Brimson's and Rios' violation of Plaintiff's right to due process protected by the Sixth Amendment of the U.S. Constitution.

201.    The U.S. Constitution, Sixth Amendment provides, in pertinent part, that: "In all criminal prosecutions, the accused shall enjoy the right to... be informed of the nature and cause of the accusation... and to have the assistance of counsel for his defense."

202.    Brimson and Rios caused Plaintiff's arrest without a warrant and knowingly without probable cause and in the clear and unequivocal commission of willful misconduct, perpetrated to fraudulently charge Plaintiff with the alleged disorderly conduct, where the only evidence is the citation on its face and the statements and/or testimony of the arresting police officer and his partner verses Plaintiff's truthful statements that he never approached Brimson and Rios with the intent to engage in the disorderly conduct alleged by Brimson and Rios.

203.    Brimson and Rios caused Plaintiff's arrest without a warrant, knowingly without probable cause, for an evil motive and willful misconduct, and knowingly in violation of Plaintiff's guaranteed protected right to due process of law in the arrest and charge of a summary offense against Plaintiff.

204.    As a result of the Defendants' animus racial and age discriminatory conduct, Plaintiff has

suffered a deprivation of Plaintiff's protected civil rights by the City of Philadelphia, the Mayor of

Philadelphia, the Philadelphia Police Department, Commissioner Ramsey, Captain Bard, the defendant

police officers, specifically Brimson and Rios, Philadelphia police officers, generally, that Plaintiff was

deprived of his civil rights by the City of Philadelphia, Philadelphia's mayor, Philadelphia's Police

Commissioner and police department and the criminal judicial system and process. Plaintiff suffers

severe animus racial discrimination, as a result of Defendant's deprivation of Plaintiff's Sixth Amendment

rights.

    WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against the

defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of

$5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for

punitive damages in an amount to be determined by the jury, plus the costs of this action, including

attorney's fees, and such other relief deemed to be just, fair, and appropriate.

### COUNT 11:  INVIDIOUS ANIMUS DISCRIMINATORY
### VIOLATION OF EIGHTH AMENDMENT RIGHT

    205.     Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs

1 through 204 above with the same force and effect as if herein set forth.

    206.     All defendants, specifically Brimson and Rios, who acted at all times knowingly in

violation of Plaintiff's rights as complained of, continually and knowingly violated Plaintiff's protected

civil right.

    207.     All defendants, specifically Brimson and Rios, had a continuing affirmative duty to

perform their professional duties as mayor, police commissioner and member police officers of the

Philadelphia Police Department in such a manner as not to either willfully and intentionally and/or

negligently did violate Plaintiff's U.S. Constitution, Fifth Amendment protected right not to be deprived

of life, liberty, or property, without due process of law by Brimson's and Rios' use of excessive force to carry-out a knowingly unlawful detention, cruel and unusual punishment, and acts of other defendants' malicious prosecution of Plaintiff, on grounds of Brimson's and Rios' known unsworn falsification made to authorities in the concealment and cover-up of Brimson's and Rios' illegal and unlawful assault and battery, false arrest, unlawful detention and malicious prosecution of Plaintiff for reasons of and on grounds of Brimson's and Rios' violation of Plaintiff's right to freedom from cruel and unusual punishment as protected by the Eighth Amendment of the U.S. Constitution.

208.    The U.S. Constitution, Eighth Amendment provides, in pertinent part, that: "...nor cruel and unusual punishments inflicted..."

209.    Brimson and Rios caused Plaintiff's arrest without a warrant and knowingly without probable cause and in the clear and unequivocal commission of willful misconduct, perpetrated to fraudulently charge Plaintiff with the alleged disorderly conduct, where the only evidence is the citation on its face and the statements and/or testimony of the arresting police officer and his partner verses Plaintiff's truthful statements that he never approached Brimson and Rios with the intent to engage in the disorderly conduct alleged by Brimson and Rios.

210.    Brimson and Rios caused Plaintiff's arrest without a warrant, knowingly without probable cause, for an evil motive and willful misconduct, and knowingly in violation of Plaintiff's guaranteed protected right to due process of law in the arrest and charge of a summary offense against Plaintiff.

211.    As a result of the Defendants' animus racial and age discriminatory conduct, Plaintiff has suffered a deprivation of Plaintiff's protected civil rights by the City of Philadelphia, the Mayor of Philadelphia, the Philadelphia Police Department, Commissioner Ramsey, Captain Bard, the defendant police officers, specifically Brimson and Rios, Philadelphia police officers, generally, that Plaintiff was deprived of his civil rights by the City of Philadelphia, Philadelphia's mayor, Philadelphia's Police

Commissioner and police department and the criminal judicial system and process, Plaintiff suffers

severe animus racial discrimination, as a result of Defendant's deprivation of Plaintiff's Eighth

Amendment rights.

WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against the

defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of

$5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for

punitive damages in an amount to be determined by the jury, plus the costs of this action, including

attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 11:  INVIDIOUS ANIMUS DISCRIMINATORY
## VIOLATION OF FOURTEENTH AMENDMENT RIGHT

212.       Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs

1 through 211 above with the same force and effect as if herein set forth.

213.       All defendants, specifically Brimson and Rios, who acted at all times knowingly in

violation of Plaintiff's rights as complained of, continually and knowingly violated Plaintiff's protected

civil rights.

214.       All defendants, specifically Brimson and Rios, had a continuing affirmative duty to

perform their professional duties as mayor, police commissioner and member police officers of the

Philadelphia Police Department in such a manner as not to either willfully and intentionally and/or

negligently did violate Plaintiff's U.S. Constitution, Fifth Amendment protected right not to be deprived

of life, liberty, or property, without due process of law by Brimson's and Rios' use of excessive force to

carry-out a knowingly unlawful detention, cruel and unusual punishment, and acts of other defendants'

malicious prosecution of Plaintiff, on grounds of Brimson's and Rios' known unsworn falsification made

to authorities in the concealment and cover-up of Brimson's and Rios' illegal and unlawful assault and

battery, false arrest, unlawful detention and malicious prosecution of Plaintiff for reasons of and on grounds of Brimson's and Rios' violation of Plaintiff's right to freedom from cruel and unusual punishment as protected by the Fourteenth Amendment of the U.S. Constitution.

215.     The U.S. Constitution, Fourteenth Amendment provides that: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*" (Emphasis mine).

216.     Brimson and Rios caused Plaintiff's arrest without a warrant and knowingly without probable cause and in the clear and unequivocal commission of willful misconduct, perpetrated to fraudulently charge Plaintiff with the alleged disorderly conduct, where the only evidence is the citation on its face and the statements and/or testimony of the arresting police officer and his partner verses Plaintiff's truthful statements that he never approached Brimson and Rios with the intent to engage in the disorderly conduct alleged by Brimson and Rios.

217.     Brimson and Rios caused Plaintiff's arrest without a warrant, knowingly without probable cause, for an evil motive and willful misconduct, and knowingly in violation of Plaintiff's guaranteed protected right to due process of law in the arrest and charge of a summary offense against Plaintiff.

218.     As a result of the Defendants' animus racial and age discriminatory conduct, Plaintiff has suffered a deprivation of Plaintiff's protected civil rights by the City of Philadelphia, the Mayor of Philadelphia, the Philadelphia Police Department, Commissioner Ramsey, Captain Bard, the defendant police officers, specifically Brimson and Rios, Philadelphia police officers, generally, that Plaintiff was deprived of his civil rights by the City of Philadelphia, Philadelphia's mayor, Philadelphia's Police Commissioner and police department and the criminal judicial system and process, Plaintiff suffers severe animus racial discrimination, as a result of Defendant's deprivation of Plaintiff's Fourteenth

Amendment rights.

WHEREFORE, Plaintiff demands judgment for the violation of his civil rights against the defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT 12: PUNITIVE DAMAGES FOR OUTRAGEOUS CONDUCT

219.     Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 218 above with the same force and effect as if herein set forth.

220.     All defendants, specifically Brimson and Rios, who acted at all times knowingly in violation of Plaintiff's civil rights as complained of, continually and knowingly violated Plaintiff's constitutionally protected civil rights.

221.     All defendants, at all times, specifically Brimson and Rios, intentionally and deliberately inflicted emotional distress on Plaintiff by interfering with Plaintiff's civil rights and conspiring against Plaintiff, thereby destroying his trust in the City of Philadelphia, Mayor Nutter, the Philadelphia Police Department, Commissioner Ramsey and Philadelphia police officers, generally.

222.     At all times, all Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

223      The actions of all Defendants, at all times, were the cause of Pratt's distress

224.     Plaintiff is a reasonable man.

225.     The emotional distress sustained by Plaintiff was severe and of a nature that no reasonable man could be expected to endure.

226.     As a result of the Defendants' extreme and outrageous conduct, Plaintiff has suffered and

with a high degree of likelihood, will continue to suffer mental pain and anguish, embarrassment,

humiliation that he was made victim of defendants' evil motive, specifically Brimson and Rios, to deprive

Plaintiff of the civil rights complained of and are guaranteed the protection of the Constitution of the

United States and the Constitution of Pennsylvania and set forth herein above.

227.      Plaintiff seeks punitive damages against defendants, specifically Brimson and Rios, "that

the Defendants' conduct "was outrageous, malicious, wanton, willful, and reckless and intentionally

designed to inflict the harm upon the plaintiffs, which Plaintiff did suffer thereof as Defendants did

intend

WHEREFORE, Plaintiff demands Judgment, including interest, against all defendants, jointly and

severally, for actual, general, special, compensatory damages in the amount of $5,000,000, plus the costs

of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

*Raymond S. Pratt*
RAYMOND S. PRATT
*Pro Se*
1109 Christian Street
Philadelphia, PA 19147
215 469-6073

Civil Rights Violation Complaint                    50

Exhibit "A"
Citation



**PHILADELPHIA MUNICIPAL COURT**

NON-TRAFFIC STATUTORY SUMMARY OFFENSES

# CITATION *C-49*

11220036

DC#: 11-22-003643-01        Sector: A        Crime Code: 2404   Desc: Disorderly Conduct

| | |
|---|---|
| COMMONWEALTH VS. | Arrest Date / Time: 1/14/11  2:00 PM |
| Defendant: PRATT, RAYMOND | Inside/Outside: I |
| 11009 N. christian ST. | Loc. 2100 N. broad ST. |
| Philadelphia, PA 19147            PID: | Philadelphia, PA 19121 |
| Sex: Male    DOB: 8/17/1944  Age: 66  Race: Black | Docket #:   MC51-SU-0000415-2011 |

Complainant Name:
POLICE, CITY OF PHILADELPHIA

| Charges: | OC Description | Grade | Count |
|---|---|---|---|
| CC5503A4 | DISORDERLY CONDUCT-HAZAR | S | 001 |

**NATURE OF THE OFFENSE**

On (day, date and time) Friday 01/14/2011 01:50 PM at (Incident Loc.) 2100 N BROAD ST.

in the County of Philadelphia, the accused committed the following acts: (description of acts and specification of statute and sector number thereof)

ABOVE DATE TIME AND LOCATION AS RPC 2217 MY PARTNER AND I WERE INVOLVED IN A CAR STOP D C # 11/22/003643, WHEN THE DEFENDENT APPROACHED THE OPEN PASSANGER DOOR TO PATROL CAR. I IMEADIETLY SMELLED AN OVERWHELMING SENT OF ALCHOOL AND WHITE SPITTLE AROUND LIPS, CONSISTANT W/DRUG USE. THE DEF. WAS ASKED TO STEP AWAY FROM VEH SEVERAL TIMES BUT REFUSSED. P/O ESCORTED HIM TO SIDEWALK AN ATEMPTED TO ACERTAIN DEFT. DISRESS, WHICH WAS NOT A POLICE MATER. THE DEFT BECAME HOSTILE AND AGGRESSIVE AND WAS ADVISED HE WAS NOT ONLY PUBLICLY INTOXICATED BUT INTERFERRING W/ A POLICE INVEST. THE DEFT. WAS ASKED TO DISPERSSE SEVERAL TIMES AND REFUSED. DEFT. WAS ARRESTED AND TRANS TO 22 ND DIST.

The facts set forth in this citation are true and correct to my personal knowledge or information and belief, and any false statements therein are made subject to the penalties of Section 4904 of the Crimes Code (18 Pa. C.S. §4904), relating to unsworn falsification to authorities.

| Officer Name | Payroll# | Badge | Dist/Unit | Platoon/Group | SCH. VAC. |
|---|---|---|---|---|---|
| RICS JUSTIN JUSTIN | 260037 | 3330 | 22/0 | 2 A | 2/12/2011 to 2/20/2011 |

Operations Room Supervisor's Signature                    Officer's Signature

## YOU ARE REQUIRED BY LAW TO APPEAR ON THE FOLLOWING ARRAIGNMENT OR TRIAL DATE

1/18/2011          Community Court, 1401 Arch Street, 2nd Floor  9:00 a.m.

(Date)                (Address)

At such time and place you may be found "Guilty", "Not Guilty" or "Enroll in the Summary Diversion Program".
You may be found Guilty in your absence in accordance with PA Rules of Criminal Procedure as early as the next business day.

Defendant's Signature                    Parent's (Guardian's) Signature

NOTICE TO DEFENDANT:   The defendant must provide written notice to the Court of any change of address within 48 hours of the date of change.

| | |
|---|---|
| ☐ Guilty  ☐ Not Guilty  ☐ Discharged | Fine  $ _____ |
| ☐ Discharged L.O.P.   ☐ Withdrawn | Cost  $ _____   Comm. Service Hrs: _____ |
| Plea: ☐ Guilty  ☐ Not Guilty | VCF  $ _____   Status Date _____ |
| (ADA Signature) | DAF  $ _____   Restitution _____ |
| I voluntarily and understandingly plead guilty and waive my right to counsel. | SAF  $ _____   Status Date _____ |
| (Defendant's Signature) | TOTAL $ _____ |
| | Pay By _____ _____ Days in County Prison |

The First Judicial District complies with the American with Disabilities Act. If you have a disability and require reasonable accommodations, please call 215-683-7272.

Judge: _____

(Given Under My Hand and Seal)        (Date)

Exhibit "B"
Criminal Docket

# MUNICIPAL COURT OF PHILADELPHIA COUNTY

## DOCKET

Docker Number: MC-51-SU-0000415-2011

## SUMMARY DOCKET

Non-Traffic

Commonwealth of Pennsylvania
v.
Raymond Pratt

## CASE INFORMATION

Cross Court Docket Nos: PARS-MC-51-SU-0000415-2011

Judge Assigned:

OTN:

Initial Issuing Authority:

Arresting Agency: Philadelphia Pd

Case Local Number Type(s)

District Control Number

Date Filed: 01/14/2011 Initiation Date: 01/14/2011

Lower Court Docket No: MC-51-SU-0000415-2011

Final Issuing Authority:

Arresting Officer: RIOS, JUSTIN P

Case Local Number(s)

1122003643

## STATUS INFORMATION

| Case Status: | Status Date | Processing Status | Arrest Date: |
|---|---|---|---|
| Active | 01/14/2011 | Awaiting Status Listing | 01/14/2011 |

## CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Arraignment Status | 01/18/2011 | 9:00 am | Community Court | Judge Craig M. Washington | Scheduled |

## DEFENDANT INFORMATION

Date Of Birth: 08/17/1944 City/State/Zip: Philadelphia, PA 19147

## CASE PARTICIPANTS

| Participant Type | Name |
|---|---|
| Defendant | Pratt, Raymond |

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Date | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | | 18 § 5503 §§ | Disorder Conduct Hazardous/Physi Off | 01/14/2011 | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183

# MUNICIPAL COURT OF PHILADELPHIA COUNTY
## DOCKET



**Docket Number: MC-51-SU-0000415-2011**
# SUMMARY DOCKET
**Non-Traffic**

Commonwealth of Pennsylvania

Page 2 of 2

v.

Raymond Pratt

## DISPOSITION SENTENCING/PENALTIES

<u>Disposition</u>

| Case Event | Disposition Date | Final Disposition |
|---|---|---|
| Sequence/Description | Offense Disposition | Grade    Section |
| Sentencing Judge | Sentence Date | Credit For Time Served |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | Start Date |
| Sentence Conditions | | |
| Linked Offense - Sentence | Link Type | Linked Docket Number |

**Proceed to Court**

| Summary Initiation | 01/14/2011 | Not Final |
|---|---|---|
| 1 / Disorder Conduct Hazardous/Physi Off | Proceed to Court | 18§5503§§A4 |

## COMMONWEALTH INFORMATION

| | |
|---|---|
| <u>Name:</u> | Philadelphia County District Attorney's Office |
| | Prosecutor |
| <u>Supreme Court No:</u> | |
| <u>Phone Number(s):</u> | |
| | (215) 686-8000    (Phone) |
| <u>Address:</u> | |
| | 3 South Penn Square |
| | Philadelphia PA  19107 |

## ATTORNEY INFORMATION

<u>Name:</u>

<u>Supreme Court No:</u>

<u>Rep. Status:</u>

<u>Phone Number(s):</u>

## ENTRIES

| Sequence Number | CP Filed Date | Document Date |
|---|---|---|
| 1 | 01/14/2011 | |
| PARS Transfer | | |

Municipal Court - Philadelphia County

Printed: 01/18/2011

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Raymond S. Pratt, Defendant
1109 Christian Street
Philadelphia, PA 19147
215-469-6073

<u>**COMPLAINT AND JURY**</u>
<u>**DEMAND ON ALL COUNTS**</u>

No

# IN THE UNITED STATES DISTRICT COURT
## FOR
## THE EASTERN DISTRICT
## OF PENNSYLVANIA

RAYMOND S. PRATT,
         Plaintiff

   vs.

CITY OF PHILADELPHIA,
PHILADELPHIA COUNTY, et al.
         Defendants.

:
:
:
:
:
:
:
:
:
:

**CIVIL RIGHTS VIOLATION**
42 U.S.C. §§ 1983, 1985(3) & 1988
  and PENDENT STATE CLAIMS

### CERTIFICATE OF SERVICE

I, Raymond S. Pratt, Plaintiff in the above-captioned matter, on my own behalf and *pro se*, hereby certify that I caused to be served a true and correct copy of: 1. the Complaint, 2. Motion to Proceed In Forma Pauperis, 3. Case Designation Form, and 4. Summons by either hand-delivery or by depositing the documents to be served in the U.S. Postal Service, located at 13th & Market Streets, Philadelphia, PA 19107, March 7, 2011 to the following individual listed below:

Shelley R. Smith,
City Solicitor,
City of Philadelphia Law Department,
City Solicitor's Office,
One Parkway, 1515 Arch St., 15th Fl.,
Philadelphia, PA 19102-1595

Service on behalf of Defendants:
City of Philadelphia, Philadelphia County
Philadelphia Police Department
22nd Police District
Police Officer Justin P. Rios, Badge No. 3330
Police Officer Ron Brimson, Badge No. 4265
John Doe Black Police Sergeant, Badge Unknw.
Nine (9) John Doe Officers of 22nd District
(Names & Badge Nos. Unknown)

Philadelphia Mayor, Michael Nutter
Police Commissioner, Charles H. Ramsey
Police Captain Branville Bard, Commander

*Raymond S. Pratt*
Raymond S. Pratt, Pro Se

Civil Rights Violation Complaint                                   51