IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND S. PRATT, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | No. 11-1346 |
| Defendants. | : | |

MEMORANDUM

Schiller, J.                                                                                                    February 22, 2012

Raymond Pratt, proceeding pro se, brings federal constitutional claims and state-law claims against the City of Philadelphia (the "City") and several individual Defendants. Currently before the Court are two motions to dismiss under Federal Rule of Civil Procedure 12(b)(6): one filed by Mayor Michael Nutter, Philadelphia Police Department ("PPD") Commissioner Charles Ramsey, PPD Captain Branville Bard, and PPD Sergeant Bisarat Worede; and one filed by Philadelphia District Attorney ("DA") R. Seth Williams and Assistant District Attorney ("ADA") Michael Pestrak. For the reasons set forth below, Defendants' motions are granted.

I.     BACKGROUND

Pratt's claims arise out of an arrest that took place on January 14, 2011. (Second Am. Compl. ¶ 14.) Pratt approached PPD Officers Justin Rios and Sammy Brinson, who were sitting in a patrol car with overhead lights flashing, to seek their assistance. (*Id.*) Officer Brinson told Pratt that the officers were engaged in a traffic stop, and Pratt responded that he could wait until they were finished. (*Id.* ¶¶ 15-16.) "[W]ithout provocation or warning," Officer Brinson grabbed Pratt, "slammed" him against the patrol car, and searched his pockets. (*Id.* ¶¶ 17-21.) Officer

Brinson then handcuffed Pratt as tightly as possible and forced him to sit in a painful position in the back of the patrol car. (*Id.* ¶¶ 22, 25-27.) Officer Brinson did not respond to Pratt's requests to loosen the handcuffs, causing Pratt serious injury. (*Id.* ¶¶ 28-29, 80-84.) After completing their traffic stop, the officers drove Pratt to the 22nd Police District headquarters, where Captain Bard was the commanding officer. (*Id.* ¶¶ 8, 30-32, 35.) The officers parked outside of the station, exited the patrol car, and left Pratt in the back seat while Officer Rios chatted with other police officers. (*Id.* ¶¶ 38-42.) Pratt shouted for assistance and kicked the car window, but his pleas were ignored for at least forty-five minutes. (*Id.* ¶¶ 41-46.) Finally, Sergeant Worede approached the car with a Taser pointed at Pratt and told him to stop kicking the window. (*Id.* ¶¶ 50-52.) After listening to Pratt's complaints, Sergeant Worede put away the Taser, loosened Pratt's handcuffs, and opened a car window. (*Id.* ¶¶ 53, 56-57.) Half an hour later, Sergeant Worede removed Pratt's handcuffs and told him he was free to go. (*Id.* ¶¶ 65-66, 70.)

Pratt received a citation for disorderly conduct based on his encounter with Officers Brinson and Rios. (*Id.* ¶¶ 85-86.) At a hearing on April 27, 2011, ADA Pestrak called Officers Brinson and Rios as witnesses, even though he had previously assured Pratt that he would only call Officer Rios. (*Id.* ¶¶ 90-99.) ADA Pestrak also knew or should have known that their testimony was perjured. (*Id.* ¶¶ 100-113.) The matter was dismissed on June 7, 2011. (DA R. Seth Williams and ADA Michael Pestrak's Mot. to Dismiss Pl.'s Second Am. Compl. Ex. C [Summary Docket].)

Pratt initiated this action on February 25, 2011, and filed an Amended Complaint on June 22, 2011. Defendants subsequently filed three separate motions to dismiss the Amended Complaint. On October 11, 2011, the Court granted Pratt leave to further amend his complaint to

cure the pleading deficiencies identified in the motions to dismiss. Pratt filed a Second Amended Complaint on November 14, 2011, bringing due process, equal protection, Fourth Amendment, Sixth Amendment, and Eighth Amendment claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, as well as state-law claims of common law conspiracy, common law assault and battery, use of excessive force, false arrest, unlawful detention, malicious prosecution, and intentional infliction of emotional distress. The present motions seek dismissal of all claims against Mayor Nutter, Commissioner Ramsey, Captain Bard, Sergeant Worede, DA Williams, and ADA Pestrak.

## II.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). "But a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that

discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Simply reciting the elements will not suffice. *Id.*; *see also Phillips*, 515 F.3d at 231. Because Pratt brings this action pro se, the Court will construe his complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 423 (E.D. Pa. 2000).

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a Rule 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

### III. DISCUSSION

#### A. Motion to Dismiss Claims Against Mayor Nutter, Commissioner Ramsey, Captain Bard, and Sergeant Worede

Mayor Nutter, Commissioner Ramsey, and Captain Bard assert that Pratt's Section 1983 claims against them should be dismissed because Pratt makes no allegations that they were

directly involved in the events that form the basis of his suit. Pratt contends that his allegations are sufficient to make out supervisory liability claims under Section 1983 against these Defendants on the ground that they were policymakers who were aware of and allowed corruption and excessive use of force by police officers.

Vicarious liability is unavailable in Section 1983 lawsuits; a plaintiff must plead that a government official violated the Constitution through his or her own actions. *Abulkhair v. Bush*, 413 F. App'x 502, 507 (3d Cir. 2011). Prior to the Supreme Court's decision in *Iqbal*, a plaintiff could proceed under a theory of supervisory liability by alleging that the government official had, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (internal quotation marks omitted). Alternatively, a plaintiff could allege that the government official "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* However, the Third Circuit has "expressed uncertainty as to the viability and scope of supervisory liability after *Iqbal*." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.8 (3d Cir. 2010); *see also, e.g.*, *Argueta v. U.S. Immigr. & Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011). The Court need not reach this issue, as Pratt's allegations fail to make out supervisory liability claims.

Pratt alleges that Mayor Nutter, Commissioner Ramsey, and Captain Bard have publicly acknowledged concerns about police corruption. (Second Am. Compl. ¶¶ 128-55.) He speculates that Directive 114, described by Commissioner Ramsey as PPD's policy for eliminating corruption, may direct officers to commit civil rights violations. (*See, e.g.*, *id.* ¶¶ 133-37.) In

addition, Pratt alleges that PPD may not provide any training or have any policies in place to prevent civil rights violations by officers. (*Id.* ¶ 138.) These allegations are not sufficient to state a plausible claim of supervisory liability; Pratt must allege "more than a sheer possibility" that Mayor Nutter, Commissioner Ramsey, and Captain Bard have established or maintained a particular policy, custom, or practice that caused his constitutional harm. *Argueta*, 643 F.3d at 72 (internal quotation marks omitted). Moreover, "[m]ere conclusory allegations . . . that the defendants failed to properly train are not enough to support a constitutional claim." *Plasko v. City of Pottsville*, 852 F. Supp. 1258, 1266 (E.D. Pa. 1994). Nor does Pratt plead any facts to support an inference that these Defendants participated in the violation of his rights, directed others to do so, or had knowledge of and acquiesced in the violation by their subordinates. Thus, Pratt fails to state a supervisory liability claim against these Defendants, and his Section 1983 claim against them will be dismissed.

Sergeant Worede argues that the Section 1983 claims against him should be dismissed because the only factual allegations concerning his conduct show that he had no role in any constitutional violations. Pratt alleges that Sergeant Worede pointed a Taser at him, told him to stop kicking the window of the patrol car, loosened his handcuffs, opened a car window, and later unlocked his handcuffs. (Second Am. Compl. ¶¶ 50-53, 56-57, 65-66, 70.) Threatening to use a Taser, without more, does not amount to a constitutional violation. *See Fuchs v. City of Farrell*, Civ. A. No. 10-998, 2011 WL 1706541, at *7 (W.D. Pa. Apr. 7, 2011). These allegations cannot support a Section 1983 claim against Sergeant Worede.

Pratt's conclusory allegations also fail to make out claims of conspiracy under Section 1985(3) or state law against Mayor Nutter, Commissioner Ramsey, Captain Bard, or Sergeant

Worede. Pratt fails to allege an agreement, a necessary element of conspiracy, or include factual allegations that these Defendants were motivated by racial or other class-based animus, as required under Section 1985(3). *See Watson v. Sec'y Pa. Dep't of Corr.*, 436 F. App'x 131, 137 (3d Cir. 2011); *Mills v. City of Harrisburg*, 350 F. App'x 770, 773-74 (3d Cir. 2009).

Finally, Pratt's state-law tort claims, though ostensibly brought against all Defendants, cannot be sustained against Mayor Nutter, Commissioner Ramsey, Captain Bard, or Sergeant Worede. Pennsylvania's Political Subdivision Tort Claims Act provides immunity for the intentional acts of municipal employees unless their conduct constitutes "a crime, actual fraud, actual malice or willful misconduct." 42 Pa. Cons. Stat. §§ 8545, 8550. The factual allegations do not demonstrate criminal, fraudulent, or malicious conduct or willful misconduct by these Defendants, who had no involvement in Pratt's arrest and prosecution. *See Vicky M. v. Ne. Educ. Intermediate Unit*, 689 F. Supp. 2d 721, 741 (M.D. Pa. 2009); *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 279 (E.D. Pa. 2001). The Court will therefore dismiss all claims against Mayor Nutter, Commissioner Ramsey, Captain Bard, and Sergeant Worede.

  **B.**  **Motion to Dismiss Claims Against DA Williams and ADA Pestrak**

DA Williams and ADA Pestrak argue that their conduct is protected by absolute prosecutorial immunity. Prosecutors enjoy absolute immunity for conduct "intimately associated with the judicial phase of the criminal process," such as initiating a prosecution and presenting a case. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity does not apply, however, "to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). In analyzing prosecutorial immunity questions, courts must consider the conduct that forms the basis of the

7

plaintiff's cause of action and then determine what function that conduct served. *See Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). Here, Pratt alleges that ADA Pestrak failed to provide advance notice that he intended to call Officer Brinson at the April 27, 2011 hearing and that he knew or should have known that Officers Brinson and Rios committed perjury at the hearing. Such conduct falls squarely within a prosecutor's judicial function and is shielded by absolute immunity. *See Rose v. Bartle*, 871 F.2d 331, 343-45 (3d Cir. 1989) (knowing use of perjured testimony or solicitation of perjured testimony in preparing a case is subject to absolute immunity). "When the underlying activity is cloaked with prosecutorial immunity, a conspiracy claim is similarly precluded." *Hull v. Mallon*, Civ. A. No. 00-5698, 2001 WL 964115, at *1 (E.D. Pa. Aug. 21, 2001). Pratt does not base his claims on any other specific conduct by DA Williams and ADA Pestrak. Thus, the Court will dismiss all claims against these Defendants.

## IV.   CONCLUSION

Because Pratt has failed to state a claim against Mayor Nutter, Commissioner Ramsey, Captain Bard, Sergeant Worede, DA Williams, or ADA Pestrak, the Court will grant the motions. Having previously granted leave to amend, the Court concludes that further amendment would be futile and will dismiss all claims against these Defendants with prejudice. Pratt's claims against the City, Officer Brinson, and Officer Rios will remain.