IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RAYMOND S. PRATT, | : | |
| --- | --- | --- |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | No. 11-1346 |
| Defendants. | : | |

MEMORANDUM

Schiller, J.                                                                                               February 22, 2013

Raymond Pratt, proceeding pro se, brings federal constitutional claims and state law claims against the City of Philadelphia (the "City"), Police Officer Justin Rios, and Police Officer Sammy Brinson (collectively, the "Officer Defendants"). Before the Court are cross-motions for summary judgment. For the reasons set forth below, Defendants' motion is granted and Plaintiff's motion is denied.

I.     BACKGROUND

Plaintiff's claims arise out of his arrest on January 14, 2011. (Defs.' Concise Statement of Material Facts ¶¶ 1-3.) While the Officer Defendants were engaged in a vehicle stop, Plaintiff approached their patrol car. (*Id.* ¶ 3.) Plaintiff admits to consuming alcohol on the day of his arrest. (Pl.'s Resp. to Defs.' Concise Statement of Material Facts ¶ 4.) After he approached the patrol car, Plaintiff claims the Officer Defendants assaulted him, arrested him without probable cause, placed him in excessively tight handcuffs, and drove him around for hours in the patrol car while Plaintiff was in an uncomfortable position. (*Id.* ¶¶ 5, 7.) In contrast, Defendants claim that Plaintiff approached the patrol car then failed to move away from it after the Officer Defendants

requested that he do so. (Decl. of Police Officer Sammy Brinson ¶¶ 5-7; Decl. of Police Officer Justin Rios ¶¶ 5-7.) Plaintiff yelled at the Officer Defendants, refused to calm down, and acted in a disorderly fashion. (Decl. of Police Officer Sammy Brinson ¶¶ 9-12.) The Officer Defendants then arrested Plaintiff, but claim that Plaintiff's handcuffs were not uncomfortably tight. (*Id.* ¶ 16.) As a result of the incident, Plaintiff received a citation for disorderly conduct. (Defs.' Concise Statement of Material Facts ¶ 7.) However, following a trial in which the Officer Defendants testified, the disorderly conduct charges were subsequently dismissed by the Municipal Court of Philadelphia County on June 7, 2011. (Pl.'s Aff. in Supp. of Motion Papers Ex. E [State Court Docket].)

Plaintiff filed the Second Amended Complaint on November 14, 2011. The Court granted two motions to dismiss on February 22, 2012, leaving only the City and the Officer Defendants (collectively, the "Defendants") in the case. On October 12, 2012, Plaintiff filed a motion for summary judgment. On November 8, 2012, Defendants filed a joint partial motion for summary judgment and opposition to Plaintiff's motion. Although Plaintiff challenges the timeliness of Defendants' motion and opposition, the Court finds that both were timely filed pursuant to the Court's September 20, 2012 Amended Scheduling Order. (*See* ECF Document No. 47 ("Dispositive motions shall be filed by November 15, 2012. Responses to any motions for summary judgment shall be filed by December 1, 2012.").)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248.

In reviewing the record, a court must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). A court must apply the same standards to cross-motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

III. DISCUSSION

    A.     § 1983 Claim Against City

Plaintiff claims that the City violated his Fourteenth Amendment rights by encouraging or ignoring police corruption and the use of excessive force by its police officers. (Second Am. Compl. ¶¶ 166-173.) "A government entity may not be held liable under section 1983 under the

respondeat superior doctrine. To obtain a judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of rights alleged." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). "Liability under 42 U.S.C. § 1983 attaches to the municipality only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury.'" *Downton v. Phone*, 441 F. App'x 91, 92 (3d Cir. 2011) (quoting *Andrews*, 895 F.2d at 1480). A government policy or custom can be established in two ways: (1) when a decision maker issues an official proclamation, policy, or edict; or (2) when "such practices of state officials [are] so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (alteration in original) (citations and internal quotation marks omitted). Plaintiffs cannot rely on conclusory allegations to establish that a policy or custom existed. *See Bayer v. Monroe Cnty. Children & Youth Servs.*, 414 F. App'x 431, 437 (3d Cir. 2011); *Robinson v. Hicks*, 450 F. App'x 168, 173 (3d Cir. 2011) (affirming summary judgment because "other than [a] conclusory statement . . ., [Plaintiffs] fail[ed] to show any evidence to prove that such a custom exists"). Plaintiff also carries "the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom and at a minimum, the government must act with deliberate indifference to the purported constitutional deprivation in order to ground liability." *Weller v. Ransom-Garner*, 338 F. App'x 249, 252 (3d Cir. 2009).

Plaintiff fails to identify any City policy or custom that resulted in the deprivation of his rights, as required for a § 1983 claim against a municipality. Although Plaintiff mentions Philadelphia Police Department Directive 114, titled "Employee's Responsibility to Report Corruption, Misconduct, and Other Improper Acts Negatively Affecting the Department," he

fails to explain how Directive 114 resulted in a deprivation of his rights. Specifically, Plaintiff alleges that the Officer Defendants' "conduct and actions against Pratt . . . are within and part of the policy and procedure of Directive 114." (Second Am. Compl. ¶ 171.) To the extent Plaintiff argues that the Philadelphia Police Department has an explicit policy of permitting its officers to use excessive force or encouraging corruption, the Court dismisses this claim, since Plaintiff fails to identify any portion of Directive 114 that encourages use of excessive force or internal corruption. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) (affirming dismissal of § 1983 claims when plaintiff "tendered no evidence of any official policy endorsing [officer's] conduct").

Plaintiff also appears to argue, in the alternative, that "the policy and procedure of Directive 114 is intended to and does intentionally provide organizational cover . . . [for officers] who wholly disregarded and routinely violated Pratt's civil rights" and "by merely conforming their acts, actions and conduct against Pratt to be in compliance with" Directive 114, the City allowed the Officer Defendants to violate Plaintiff's rights with impunity. (Second Am. Compl. ¶¶ 137-39.) To the extent that Plaintiff is arguing that there is a custom of Philadelphia police officers using excessive force and the City ignoring such impropriety when Directive 114 procedures are complied with, Plaintiff has not provided anything other than conclusory statements to support this claim. Plaintiff merely points to the existence of Directive 114, then declares that it "provide[s] organizational cover" for officers to disregard individuals' rights. (*Id.* ¶ 139.) Now, even following discovery, Plaintiff has failed to present any facts that would support the existence of this type of custom. At the summary judgment stage, the Court requires more than the mere existence of an anti-corruption policy and allegations of "systemic police

5

corruption" to find fault with a municipality under § 1983. *See Bayer*, 414 F. App'x at 437 (holding that conclusory allegations are insufficient to establish that a municipality had a policy which resulted in a violation of plaintiff's rights); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (finding that "vague assertions about the police department's failure to investigate other wrongdoings" were insufficient to establish a municipal policy); *Woodley v. Al-Ayoubi*, Civ. A. No. 09-1403, 2011 WL 4594204, at *4 (D.N.J. Sept. 27, 2011) (finding references to "overall police corruption" inadequate for § 1983 claim). Therefore, the § 1983 claim against the City is dismissed.

B. **State Law Claims Against City**

Plaintiff also brings various state law claims against the City. In Pennsylvania, the City is generally immune from tort liability for damages "on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." *See* 42 Pa. Cons. Stat. § 8541. Although there are limited exceptions to the immunity, every exception requires that the plaintiff's injuries be a result of negligence rather than "actual fraud, actual malice or willful misconduct." *Id.* § 8542(a)(2).

Pratt's allegations and causes of action all hinge on purposeful, intentional conduct. According to Plaintiff, while conducting a traffic stop with Officer Rios, Officer Brinson "exploded into [a] rage" and proceeded to "[get] physically in Pratt's face," grab him, and "jam[] [his fist] into Pratt's neck." (Pl.'s Aff. in Supp. of Mot. Papers Ex. D [Official Police Misconduct Compl.].) Officer Brinson, in Officer Rios' presence, then "intentionally placed and tightened the hand-cuffs on both of Pratt's wrists as tight as mechanically and physically possible." (*See id.*; Pl.'s Resp. to Defs.' Concise Statement of Material Facts ¶ 11.) Officer Defendants refused to

loosen the handcuffs, even after Plaintiff complained that they "were too tight and cutting into Pratt's wrists and stopping blood circulation to Pratt's hands." (Pl.'s Aff. in Supp. of Mot. Papers ¶ 15.) At no time does Plaintiff present facts or even allege that any Defendant acted negligently or with anything other than complete and total awareness of Plaintiff's distress. Because the City is immune from claims stemming from "actual malice or willful misconduct," the Court dismisses the state law claims against the City.

C. § 1985(3) and § 1986 Claims

Plaintiff claims that Defendants conspired to conceal the various constitutional and state law violations because of Plaintiff's race and age. Under 42 U.S.C. § 1985(3), Plaintiff must allege: (1) a conspiracy; (2) with the purpose of depriving, either directly or indirectly, any person of the equal protections of the law; (3) an act in furtherance of the conspiracy; (4) injury or deprivation of a right or privilege. *See Gary v. Pa. Human Relations Comm'n*, App. A. No. 12-2257, 2012 WL 4127271, at *3 (3d Cir. Sept. 20, 2012). The second component of the test requires that the conspiracy be motivated by racial, gender, or other class-based discriminatory animus. *See Slater v. Susquehanna Cnty.*, 465 F. App'x 132, 136 (3d Cir. 2012). At the summary judgment stage, a plaintiff must "put forward facts that would allow a reasonable factfinder to conclude that [the parties] formed a conspiracy to deprive him of his rights." *Estate of Olivia v. New Jersey*, 604 F.3d 788, 802 (3d Cir. 2010). "Without more, the bare allegation of an agreement is insufficient to sustain a conspiracy claim." *Brown v. Deparlos*, App. A. No. 12-1217, 2012 WL 2512014, at *3 (3d Cir. July 2, 2012).

Because Plaintiff provides no details, facts, or proof to support the § 1985 claim, the Court dismisses it. First, the crux of this claim is that Defendants attempted to conceal their

unlawful treatment by "falsely charging Pratt with disorderly conduct." (Second Am. Compl. ¶ 174.) The Court already dismissed this claim against multiple defendants, including District Attorney Rufus Williams, at the motion to dismiss stage. To the extent that Plaintiff is alleging a § 1985(3) violation against the City or Officer Defendants, Plaintiff fails to present any facts or evidence that the City or Officer Defendants were involved in the decision to charge or prosecute Pratt for disorderly conduct. Similarly, the Court must dismiss the § 1985(3) claim because Plaintiff neither addresses it in his opposition nor provides any support for his allegations that the conspiracy was motivated by racial or other class-based discriminatory animus. *See Gary*, 2012 WL 4127271, at *3 ("[A] conclusory statement, absent any factual basis, is insufficient to set forth a plausible claim for relief.").

Last, absent a valid § 1985(3) claim, Plaintiff's claim under 42 U.S.C. § 1986 also fails, as liability under that statute is predicated on actual knowledge of a § 1985 violation. *See id.*; *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980) ("Because transgressions of [§] 1986 by definition depend on a preexisting violation of [§] 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also.").

### D. Fifth Amendment Claim

The Court dismisses Plaintiff's Fifth Amendment claim because the Fifth Amendment does not apply to claims against municipal actors. *See Smith v. Rebstock*, 465 F. App'x 210, 212 (3d Cir. 2012) (affirming dismissal of a Fifth Amendment claim because the defendant was a municipal, rather than federal, employee); *Kelly v. Borough of Sayreville, N.J.*, 107 F.3d 1073, 1076 (3d Cir. 1997) (finding that due process claims against a municipality should be considered under the Fourteenth Amendment).

E.  **Sixth Amendment Claim**

Plaintiff argues that his Sixth Amendment rights were violated when the prosecution in his disorderly conduct trial "presented knowingly perjured testimonies of Brinson and Rios in support of proof of the Commonwealth's false disorderly conduct charge." (Second Am. Compl. ¶ 224.) While it is unclear if Plaintiff is claiming Sixth Amendment violations by the Defendants, assuming that he is, the claims must be dismissed. Plaintiff merely states in a conclusory fashion that his Sixth Amendment rights were violated. He presents no supporting facts, nor does he explain how perjured testimony and a conspiracy to conceal the officers' treatment of Plaintiff would support a Sixth Amendment claim against the Defendants.

F.  **Eighth and Fourteenth Amendment Claims**

Plaintiff appears to argue that his Eighth Amendment rights were violated based on the Defendant Officers' use of excessive force in the backseat of the police vehicle. However, the Eighth Amendment only applies once an individual has been convicted and sentenced. *Schneyder v. Smith*, 653 F.3d 313, 320-21 (3d Cir. 2011). All of Plaintiff's allegations occurred during his arrest, and he was never convicted or sentenced.

As to Plaintiff's Fourteenth Amendment claims, under the "more-specific-provision rule," if a "constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)) (internal quotation marks omitted). As Plaintiff admits, the Fourth Amendment, not the Fourteenth Amendment, applies to excessive force claims made by an arrestee. *See Graham*

*v. Connor*, 490 U.S. 386, 388 (1989) ("We hold that [excessive force] claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard."); *James v. York Cnty. Police Dep't*, 160 F. App'x 126, 131 (3d Cir. 2005) (finding that the Fourth Amendment applies to arrestees while the Fourteenth Amendment applies to pretrial detainees, those charged with but not yet convicted of a crime); Pl.'s Mot. for Summ. J. at 3 ("[T]he crux of the civil rights violations claims and the pendent state violations claims against the Defendants is in the Fourth Amendment claim violations.") Therefore, the Court dismisses the Eighth and Fourteenth Amendment claims.

### G. § 1988(a) Claim

Plaintiff purports to bring a claim under 42 U.S.C. § 1988(a), which Plaintiff asserts "provides for . . . remedies applicable to the 'state law violations' of Pratt's civil rights and constitutionally protected rights, by all named-defendants, as actionable under § 1983." (Second Am. Compl. ¶ 261.) However, "[§] 1988 creates no independent cause of action, but merely authorizes resort to state law and the common law when federal procedures or remedies are inadequate to provide relief." *Marino v. Bowers*, 483 F.Supp. 765, 769 (E.D. Pa. 1980); *see also Moor v. Alameda Cnty.*, 411 U.S. 693, 701-02 (1973) ("We are unable to conclude that Congress intended [§ 1988], standing alone, to authorize the federal courts to borrow entire causes of action from state law."). Therefore, the Court dismisses Plaintiff's § 1988 claim.

### H. Intentional Infliction of Emotional Distress Claim

Plaintiff alleges that, because of Defendants' conduct, Plaintiff suffered "mental pain and anguish, embarrassment, [and] humiliation." (Second Am. Compl. ¶ 202.) Defendants argue that Plaintiff's claim must be dismissed, as he failed to provide any expert medical confirmation that

Plaintiff actually suffered the claimed distress. (Defs.' Mot. for Summ. J. at 14.) Plaintiff never discusses this claim in his opposition or provides any medical evidence supporting this claim.

The Pennsylvania Supreme Court has held that for intentional infliction of emotional distress claims, "at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987). Plaintiff provides nothing to support his claim that he suffered emotional distress at all. Specifically, he fails to allege when he suffered the emotional distress, symptoms or details about the distress, or provide any medical evidence that would bolster the vague claims in the Second Amended Complaint. Although Plaintiff provided a medical report, it discusses only physical, not emotional, injuries. (*See* Pl.'s Mot. for Summ. J. Ex. A.) For these reasons, his claim is dismissed. *See Williams v. Merion Mem'l Park*, Civ. A. No. 167, 1996 WL 1358450 (Ct. Com. Pl. Phila. Cnty. Apr. 24, 1996).

I. **Rooker-Feldman Doctrine**

Plaintiff also argues that the Rooker-Feldman doctrine requires the Court to deny Defendants' motion for summary judgment. The Rooker-Feldman doctrine "withholds jurisdiction of federal courts . . . over state judgments, as they are more appropriately appealed within the state judiciary. It is narrow in scope . . . [and is confined to] cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Kandil v. Yurkovic*, 448 F. App'x 228, 231 (3d Cir. 2011). Plaintiff appears to claim that the government brought disorderly conduct charges against him for this incident, which were later dismissed, and therefore Defendants are precluded from making certain arguments in their

motion for summary judgment. This is an improper application of the Rooker-Feldman doctrine. For the Rooker-Feldman doctrine to apply, the first requirement is that "the federal plaintiff lost in state court." *Id.* Here, the federal plaintiff, Pratt, won in state court when the charges were dismissed against him. Therefore, the Rooker-Feldman doctrine does not apply.

## J. Plaintiff's Motion for Summary Judgment

Plaintiff also filed a motion for summary judgment, which substantively addressed only his Fourth Amendment excessive force claims. The test for whether an officer used excessive force during an arrest is whether "the officer's use of force was objectively reasonable under the circumstances." *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999). Because the application of this test is frequently fact-intensive, "reasonableness under the Fourth Amendment should frequently remain a question for the jury." *Id.*

Here, there are genuine disputes of material fact, such as the cause of Plaintiff's injuries, which the Court cannot decide on a motion for summary judgment. Although Plaintiff argues that he suffered injuries from being handcuffed too tightly, Officer Brinson claims that he could "place [his] little finger between [Plaintiff's] wrist and [the] cuffs, which is what [he] was trained is required to prevent circulation being cut off," and Officer Rios refutes Plaintiff's claim that he complained about the handcuffs. (*See* Decl. of Police Officer Sammy Brinson ¶ 16; Decl. of Police Officer Justin Rios ¶ 17.) The Officer Defendants also claim that Plaintiff approached the officers during a traffic stop, refused to move away from the police car, yelled at the officers, and acted in a disorderly manner. (Decl. of Police Officer Sammy Brinson ¶¶ 5-11; Decl. of Police Officer Justin Rios ¶¶ 5-12.) Drawing all inferences in favor of the nonmoving parties, the Court finds a genuine dispute of material fact as to Plaintiff's Fourth Amendment claims.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Defendants' motion for summary judgment. The Court will deny Plaintiff's motion. An Order consistent with this memorandum will be docketed separately.